**OTIS ELEVATOR COMPANY, Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant,**

**and**

**United States Elevator Corporation, Defendant-Intervenor.**

**Civ. A. No. 76–2233.**

United States District Court, District of Columbia.

Dec. 22, 1976.

---

11. See Haner letter to Graham, dated June 2, 1976, appearing as defendant's exhibit number one to discovery depositions.

David V. Anthony and Thomas C. Wheeler of Pettit, Evers & Martin, Washington, D.C., for plaintiff.

Peter J. Ciano and Frank R. Filiatreau, of WMATA, Washington, D.C., for defendant.

Robert H. Rumizen and Jacob B. Pompan, Pompan & Burch, Washington, D.C., for intervenor-defendant.

## MEMORANDUM

GASCH, District Judge.

This action for declaratory and injunctive relief arises under D.C. Code § 1–1434 and 28 U.S.C. §§ 1331, 1361, 2201, and 2202. Plaintiff Otis Elevator Company ("Otis") is a New Jersey corporation which engages in the business of manufacturing and installing elevators. Defendant Washington Metropolitan Area Transit Authority ("WMATA") is a municipal corporation created by

Interstate Compact among the States of Maryland and Virginia and the District of Columbia, and approved by Act of Congress, Pub. L. No. 89–774 (November 6, 1966). Intervenor-defendant U. S. Elevator Corporation ("intervenor"), a California corporation also engaged in the elevator business, is one of plaintiff's chief competitors.

Otis brought this action on December 7, 1976, seeking a temporary restraining order which would prevent WMATA from awarding a certain elevator construction contract to intervenor. Although Otis had been the low bidder on that contract, its bid has been declared "non-responsive" by WMATA. Otis challenges the lawfulness of that designation and accordingly seeks to prevent WMATA from awarding the contract to the only other bidder—intervenor U. S. Elevator Corporation. Although that contract award was originally scheduled to take place on December 9, WMATA agreed (with the assent of the intervenor) to postpone such action until December 23 so that all issues before this Court could be fully briefed and so that plaintiff's motion could be adjudicated as one for permanent injunctive relief. It is clear that on that date WMATA would award the contract to intervenor unless prevented from so doing by this Court.

Between the time that this action was filed on December 7 and the date of oral argument, December 20, each of the three parties filed numerous pleadings with the Court. In addition to Otis' motion for permanent injunctive relief, pending before the Court are WMATA's motion to dismiss for lack of jurisdiction and the motions of

each defending party for summary judgment or judgment on the pleadings. For the reasons briefly set forth below, the Court finds that Otis' motion for permanent injunctive relief should be granted and the motions of the defending parties should be denied.

## THE FACTS

The material facts in this case are not in dispute.[1] On September 13, 1976, WMATA invited competitive bidding for the contract here at issue. This solicitation, issued as Invitation No. IFB–C–210, requested bids for the fabrication and installation of twelve elevators for the handicapped at six suburban Metro subway stations located in Maryland and Virginia. The contract in the offing is the fourth in a series of similar elevator procurements for the Metro subway system and is referred to by WMATA as "Elevators 4, No. 1Z4144."[2]

Attached to this bid invitation was a nine-page document designated as "Appendix A" and entitled "Notice of Requirement for Submission of Affirmative Action Plan to Ensure Equal Employment Opportunity."[3] This appendix was included pursuant to what is commonly known as the "Washington Plan," an affirmative action program designed by the Department of Labor under authority of an Executive Order[4] for the purpose of increasing the percentages of minority employment within various construction trades throughout the Washington metropolitan area.[5] This Plan specifies a "minimum acceptable" minority employment percentage for each included construction trade category[6] and requires an

1. At various times during oral argument, counsel for each of the three parties acknowledged that no material fact is disputed in this case. Accordingly, the defending parties have opposed *Otis' motion for permanent injunctive relief* with summary judgment motions of their own.

2. *See* Affidavit of Roy T. Dodge, Contracting Officer for WMATA, attached to WMATA's Motion for Summary Judgment.

3. *See, e.g.,* Plaintiff's Exhibit # 1. Also included as part of this "Appendix A" is a supplemental sheet extending the most recent minority employment requirements (those applicable

as of May 31, 1974) throughout the life of the contract.

4. *See* Executive Order 11246, 3 C.F.R. 339 (1964–1965 Compilation).

5. The Washington Plan is codified at 41 C.F.R. § 60–5.1 *et seq.*

6. As reflected in Appendix A, the Washington Plan covers the following trade categories: Electricians; Painters and Paperhangers; Plumbers, Pipefitters and Steamfitters; Iron Workers; Sheet Metal Workers; Elevator Con-

employer's express commitment to these minority employment goals as a prerequisite to federal contract eligibility. The instant bid invitation accordingly required that each bidder specify its minority employment goals "only for those trades to be used in the performance of the Federally-involved contract," [7] and to submit this information as "Appendix A" to its bid. The failure to submit such information, or to make minority employment commitments at the minimum levels specified in the Plan, has been clearly stated to constitute invalidation of a bid.[8]

While preparing its bid on the contract at issue, Otis assertedly made the determination that if it were the successful bidder it could perform the contract exclusively with elevator construction trade personnel. With respect to this particular trade category, plaintiff believed that the Washington Plan had been superseded by a nationwide affirmative action plan, the "NEII/IUEC Plan," negotiated between the International Union of Elevator Constructors and the National Elevator Industry, Inc., a trade

association of which Otis is a signatory member.[9] This unique cooperative plan for the elevator construction industry [10] has been in effect since April 1, 1974 and was approved by the Department of Labor's Office of Federal Contract Compliance as a nationwide substitute for local affirmative action plans such as the Washington Plan insofar as those local plans pertain to the elevator construction trade.[11]

In light of the above, Otis was consequently uncertain as to the manner in which it should complete Appendix A when submitting its bid, if the form even had to be completed at all. Accordingly, Otis' District Manager, Donald E. James, contacted appropriate WMATA personnel in an attempt to obtain guidance on this question. Pursuant to this inquiry, a meeting was held on October 15 and was attended by, among others: Mr. James for Otis; Mr. Peter Brown, WMATA's duly authorized representative; [12] and a representative of the Elevator Industry National Recruitment Training Program ("EINRTP"), who was able to explain details of the nation-

structors; Asbestos Workers; Lathers; Boiler Makers; Tile and Terrazzo Workers; and Glaziers. *See* Plaintiff's Exhibit # 1 at A–1.

7. Plaintiff's Exhibit # 1 at A–3.

8. Appendix A, in pertinent part, reads as follows:
 A bidder who fails or refuses to complete or submit such goals shall not be deemed a responsive bidder and may not be awarded the contract or sub-contract, but such goals need be submitted only for those trades to be used in the performance of the Federally-involved contract.

 Plaintiff's Exhibit # 1 at A–3; *see Northeast Construction Co. v. Romney*, 157 U.S.App.D.C. 381, 485 F.2d 752, 759 (1973).

9. *See* Plaintiff's Exhibit # 2.

10. The Director of the Department of Labor's Office of Federal Contract Compliance has described the development of this Plan as follows:
 The National Office of OFCC has worked for approximately three (3) years with the National Elevator Industry to develop an acceptable affirmative action program designed to correct the underutilization of minority workers in the industry. The Elevator Industry, because of its unique characteristics . . . creates an environment where such a program can be monitored and enforced in a cooperative manner.

Letter of Philip J. Davis, Director of the Office of Federal Contract Compliance, Plaintiff's Exhibit # 3.

11. *See id.* at 2. The OFCC approval letter provided as follows:
 By accepting the National Elevator Industry program as a viable affirmative action program our office states the following as policy:
 1. Local members of the International Union of Elevator Constructors and contractors who are members of the National collective bargaining agreement *shall not be required to become signatory to local hometown plans*; meet the requirements of Imposed Plans; or Part II of Bid Conditions, providing that the NEII/IUEC strictly adhere to the program requirements developed by their representatives and OFCC.

 *Id.* (emphasis added). At oral argument, counsel for WMATA conceded the fact that the NEII/IUEC Plan does indeed supersede the Washington Plan with respect to this one trade category.

12. At oral argument, counsel for WMATA conceded that Mr. Brown was fully authorized to provide the instructions admittedly given. *See* note 13 *infra*.

wide NEII/IUEC Plan. Otis contends, and WMATA concedes,[13] that Mr. Brown advised Mr. James at this meeting that Otis should sign Appendix A, enter the phrase "not applicable" opposite all references to the elevator constructor category, and enter appropriate percentages opposite other trade categories if they were to be used in the performance of the contract.[14]

With one inconsequential exception, Otis completed Appendix A precisely as instructed: it signed and submitted the form with its bid after entering the phrase "not applicable" directly opposite each reference to the elevator construction trade.[15] As was the case with respect to each of the three previous elevator contracts in this series, Otis and intervenor were the only two bidders. When their bids were opened and tabulated on October 20, Otis was declared the successful low bidder at $1,154,205. The intervenor's bid exceeded Otis' bid by $35,062.

Two days later, by letter of October 22, counsel for the intervenor questioned the responsiveness of Otis' bid based upon the manner in which Otis had completed Appendix A.[16] Several weeks later, after un-dertaking some investigation of the matter,[17] WMATA's Contracting Officer advised Otis by letter dated December 2 that its "failure to properly fill out the Appendix A Affirmative Action Plan [had] rendered [its] bid non-responsive."[18] WMATA accordingly determined that contract should be awarded to intervenor and this action followed.

## THE MOTIONS

In its motion to dismiss, WMATA has advanced the threshold argument that this Court lacks jurisdiction over Otis' claim. It appears to rest this position on its assertion that Otis lacks standing to challenge the lawfulness of WMATA's past and proposed course of conduct regarding the contract at issue. As noted in the source of authority upon which WMATA chiefly relies,[19] however, this Circuit has wisely adopted a more "relaxed view" of this concept than that which might favor WMATA's motion. *See Scanwell Laboratories, Inc. v. Shaffer*, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970); *cf. Northeast Construction Co. v. Romney*, 157 U.S.App.D.C. 381, 485 F.2d 752, 760 & n.18 (1973). Moreover, the

---

13. At oral argument, counsel for WMATA further conceded that Mr. Brown advised Otis as claimed.

14. *See* note 7 *supra* and accompanying text.

15. The only place at which Otis entered the phrase "not applicable" in such a way that it was not directly opposite the line for the elevator constructor trade was on page A–1 of Appendix A. That portion of the Appendix pertains to an outdated period of the Washington Plan, one which is not extended by the supplemental page attached to Appendix A. *See* note 3 *supra.* It therefore holds no significance and could just as easily have been left blank.

16. *See* Exhibit # 1 to Plaintiff's December 7 Memorandum.

17. *See* notes 32–34 *infra* and accompanying text.

18. Letter dated December 2, 1976, from Roy T. Dodge, WMATA Contracting Officer, Plaintiff's Exhibit # 18. In this notification, WMATA asserted a number of not entirely consistent reasons why the "non-responsiveness" determination had been made. The principal reason given was the purported ambiguity of Otis' Appendix A submission:

> Due to the manner in which the words "Not Applicable" were inserted on the form, it cannot be ascertained for which categories the bidder intended such words to be applicable. Therefore, we can only conclude that, on the face of the bid, the words "Not Applicable" were meant to apply to all the trades listed on the form.

*Id.* at 1. However, the letter also placed reliance upon WMATA's conclusion that its "experience with previous elevator contracts clearly indicates that other trades would have to be used" and upon its view that "there is no guaranty [*sic*] the EINTRP plan would be in effect during the performance of the instant contract." *Id.* at 2.

19. *Morgan Associates v. United States Postal Service*, 387 F.Supp. 947 (S.D.N.Y.1975). It is noted that when the *Morgan* case came before the Second Circuit on appeal, that Court expressly declined to affirm the lower court's ruling on standing; it chose to proceed to the merits rather than deal with what it referred to as the "troublesome" standing question posed on appeal. *See* 511 F.2d 1223, 1225 (2nd Cir. 1975).

imaginative arguments which WMATA advances here were effectively discredited by Judge Parker's discussion of a litigant's standing to sue WMATA in *The Bootery, Inc. v. Washington Metropolitan Area Transit Authority*, 326 F.Supp. 794 (D.D.C. 1971). In that decision, Judge Parker held the "federal interest" in the WMATA Compact called for the application of general standing criteria [20] to the case before him, a test which was easily met by plaintiffs.[21] The Court sees no reason why a similar result should not apply here under the circumstances presented.[22]

Proceeding to the merits of the case, the Court notes at the outset that at oral argument counsel for each party urged the Court to decide the issue of whether Otis' bid was responsive on the "four corners" of the bid as submitted. The Court readily agrees with counsel that such is the most appropriate approach and notes also in this connection that the Court of Appeals for this Circuit has required a bidder's strict adherence to the clerical as well as the promissory requirements of Appendix A. In *Northeast Construction Co. v. Romney*, 157 U.S.App.D.C. 381, 485 F.2d 752 (1973)

that Court found that the bidder before them had "ignored" the stated requirement of Appendix A that minority employment percentages be included for all trades to be used in the performance of the contract bid upon. *Id.* at 760. Thus, although the bidder in that case had seemingly fulfilled the underlying promissory obligation of the Washington Plan,[23] it had not met the test of strict adherence held necessary to avoid the invalidation of its bid. *See id.* at 762; *Rossetti Contracting Co., Inc. v. Brennan*, 508 F.2d 1039, 1046 (7th Cir. 1975).

In the instant case, however, a very different situation is presented. Otis did not, unlike the bidder in *Northeast*, fail to make appropriate entries for any trade category pertinent to the contract. Rather, it merely placed the phrase "not applicable" opposite the elevator constructor category, the only trade category which it says it intended to use to perform the contract if it were the successful bidder.

Although the evidence is indeed contradictory as to whether Otis may have intended to use members of a second trade category (iron workers) in the performance of this contract,[24] such evidence is simply not rele-

---

**20.** *See, e. g., Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Scanwell, supra; Ballerina Pen Co. v. Kunzig*, 140 U.S.App.D.C. 98, 433 F.2d 1204 (1970).

**21.** 326 F.Supp. at 799. Judge Parker reasoned as follows:

To hold that the Compact is an agreement between the political signatories imputing only to those signatories standing to challenge actions pursuant to it would be unduly narrow in view of the direct impact on plaintiffs and other taxpayers.

In view of the federal interest in the Compact, there appears no reason why the general criteria for standing to challenge action under a federal statute should not be employed.

*Id.* at 798–99.

**22.** It is noted that Otis properly brings suit in this Court under D.C. Code § 1–1434, which provides:

The United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland and Virginia, of all actions brought by or against the Authority

and to enforce subpoenas issued pursuant to the provisions of Title III. Any such action initiated in a State court shall be removable to the appropriate United States District Court in the manner provided by section 1446 of title 28, U.S. Code.

**23.** *See* 485 F.2d at 756.

**24.** The defending parties have pointed to the deposition of Otis' District Manager, Donald James, wherein he states that he had "intended to subcontract the work out" which might otherwise be done by members of the iron worker trade. Dep. Tr. at 32–33, 34–35, and 50–51. In this connection, they also point to the fact that Appendix A requires that minority employment percentages be entered with respect to any work to be subcontracted out by the bidder. Plaintiff's Exhibit # 1 at A–3. Finally, there is the admission of Otis that its Philadelphia Regional Office prepared pre-bid estimate sheets which referred to iron workers as well as to members of the elevator constructor trade. *See* Plaintiff's Brief in Opposition to Defendant's Motion Under Rule 37 at 5.

Yet, on the other hand, the affidavit of WMATA's own representative, Peter Brown,

vant to the responsiveness of Otis' bid at the time that it was opened. It is most significant that Appendix A by its very terms requires that "goals need be submitted *only* for those trades to be used in the performance of the Federally-involved contract."[25] Hence, the Washington Plan leaves it to the bidder to determine exactly which trade categories are necessary to the performance of the contract; the *Northeast* decision requires only that specific percentage entries be made for each such pertinent category.

 To be sure; a bidder should be held to a good faith standard in his determination of "those trades to be used," just as a bidder is likewise deemed committed to "make every good faith effort" to comply with those minority employment percentages specified.[26] But it should hardly be within the discretion of the procuring agency to make subtle, inevitably fatal determinations concerning the exact trade categories it considers necessary to the performance of the contract and to then point to the *Northeast* case as mandating a declaration of non-responsiveness. Yet this is, in part, exactly what WMATA has done[27] and it indeed constitutes the position upon which WMATA ultimately placed exclusive reliance at oral argument. Without belaboring the point, the Court feels compelled to note that WMATA could just as easily have declared the intervenor's bid on the controverted contract to be non-responsive

inasmuch as the Appendix A form submitted with that bid failed to specify percentages for a trade category (painters and paperhangers) which the intervenor had for whatever reasons included as part of its prior bids in this series of similar elevator contracts.[28] Certainly, then, it is only appropriate to conclude—particularly in light of the parties' consensus that this Court should look only to the "four corners" of Otis' bid as submitted—that Otis' bid could not reasonably have been declared to be non-responsive by WMATA simply because it failed to specify percentages for a trade category (iron workers) which WMATA deemed to have been necessary to the performance of the contract. The Court holds that Otis' submission, properly taken at face value,[29] was in no way defective in this regard.

There remains for discussion only the matter of the one trade which Otis *did* deem necessary to the performance of the contract (the elevator construction trade) and the propriety of the manner in which Otis completed Appendix A in that connection. As is implied above, WMATA expressly conceded this portion of its case at oral argument. Specifically, WMATA's counsel acknowledge the nature and scope of the national plan for this trade and admitted that it does indeed "supersede" the Washington Plan as Otis has all along maintained. Moreover, it was stipulated

---

offers persuasive support for Otis' claims concerning its pre-bid intent as demonstrated at the October 15 meeting: "Mr. James maintained that only elevator constructors would be used in the installation of the elevators by the company." *See* Plaintiff's Exhibit # 16, ¶ 8.

**25.** Plaintiff's Exhibit # 1 at A–3 (emphasis added).

**26.** Appendix A provides, in pertinent part, as follows:

　　5. The Contractor's or subcontractor's (collectively hereinafter referred to as "contractor") commitment to specific goals for minority manpower utilization as required by this Appendix A shall constitute a commitment to make every good faith effort to meet such goals.

Plaintiff's Exhibit # 1 at A–6. Appendix A goes on to specify sixteen criteria upon which a "determination of 'good faith' will be based" if

a contractor for some reason fails to meet these specified goals. *Id.* at A–6, A–7.

**27.** *See* note 11 *supra.*

**28.** It was stated at oral argument that the intervenor's bids for the first and second contracts in this series contained percentage entries for all listed trade categories, but that its bid on the contract at issue here contained entries for only a portion of those categories. Under the view which WMATA appears to espouse to this Court, nothing could have prevented it from declaring the intervenor's bid on the fourth contract to be non-responsive if it decided that any omitted trade category was necessary to the performance of that contract.

**29.** *See* notes 25–26 *supra* and accompanying text.

that Otis' District Manager had indeed been instructed by WMATA's duly authorized representative to enter the phrase "not applicable" opposite all pertinent references to elevator constructors appearing on Appendix A.[30] Hence, WMATA has abandoned its earlier attempts to justify its designation of non-responsiveness on the basis of the elevator constructor issue.[31]

■ Despite the fervent efforts of the intervenor's counsel to pursue this issue at oral argument, the Court must agree with Otis' contention (and WMATA's admission) that the Washington Plan is indeed superseded by the nationwide affirmative action plan with respect to the elevator constructor trade category. Certainly, the evidence overwhelmingly supports such a view.[32] The Court finds that it was therefore entirely reasonable for a representative of Otis to seek clarification and guidance concerning the proper manner in which this situation should be reflected on its Appendix A submission. Certainly, such an undertaking can be seen only as in respectful accord with the underlying principles of the *Northeast* case. Of course the fact that Otis submitted its bid precisely as instructed does not of itself make the bid necessarily responsive. The determinative point is that Otis' notation that Appendix A is "not applicable" was both an accurate and pertinent statement of fact, one which was eminently communicative under all attendant circumstances,[33] and which by no reasonable standard could have been construed as running afoul of the rule of the *Northeast* case. Indeed, in view of the circumstances presented to the Court's attention at oral argument, the intervenor should hardly be heard to argue to the contrary.[34]

In sum, the Court finds that Otis' Appendix A submission could not have been reasonably designated as non-responsive for the lack of a percentage entry in connection with the iron worker trade. Similarly, there existed no reasonable basis upon which WMATA (or, now, the intervenor) could justify such a designation in connection with the elevator constructor trade.

30. In fact, counsel for WMATA went so far as to even suggest that the Court could assume that Otis had "acted in good faith" in following these instructions.

31. *See* note 11 supra and accompany text.

32. *See* notes 9–11 *supra* and accompanying text. It is most significant that at the time during which it was apparently deliberating over the propriety of Otis' bid, WMATA sought an opinion letter from the Department of Labor's Office of Federal Contract Compliance concerning this precise question. *See* Plaintiff's Exhibit # 6. By letter of November 10, WMATA was advised as follows:

> The Washington Plan is an imposed plan promulgated by the Secretary of Labor pursuant to his authority under Executive Order 11246, as amended. Accordingly, signatories to the NEII/IUEC Plan are exempt from requirements of the Washington Plan otherwise applicable to them with regard to the employment of minorities in the Elevator Constructors' trade.

Plaintiff's Exhibit # 7 at 1–2; *see* Plaintiff's Exhibits 2–5.

33. The Court finds it inconceivable under the circumstances that WMATA would not have understood the meaning of the phrase "not applicable," particularly in view of the locations at which it was entered. Even aside from the discussion (albeit not within the strict letter of Appendix A) which had already taken place to address this subject, WMATA was fully aware of the inapplicability of the Appendix insofar as this one trade is concerned based upon both current and prior information. *See* note 32 *supra* and note 34 *infra*.

34. It is noted that the intervenor's bid on the third contract in this series, which it was awarded, did not contain any percentage entries at all. *See* Plaintiff's Exhibit # 8 at A–1 through A–5. Under the Court's questioning at oral argument, both WMATA and the intervenor were quick to admit that WMATA's failure to designate that bid as non-responsive was a "mistake." They admit further that the extended negotiations which took place subsequent to that bid submission, as a result of which WMATA found the intervenor's affirmative action intentions to be "acceptable," were also improper. *See* Plaintiff's Exhibits 10–15. Most significant among these post-bid contacts was the intervenor's reliance upon the NEII/IUEC Plan as a "substitute" for the Washington Plan requirements. *See* letter from the intervenor's Compliance Officer to Mr. Peter Brown of WMATA, Plaintiff's Exhibit # 12. This evidence not only further undermines the integrity of the intervenor's argument, but also lends strong support to the conclusion that the form of Otis' submission was indeed sufficiently communicative.

The Court finds that Otis' bid was fully responsive and that WMATA regrettably erred (a mistake which to its credit it now for the most part admits) in making its determination to the contrary. Otis is accordingly entitled to a declaratory judgment to this effect and to an order enjoining WMATA from awarding this contract to the intervenor as scheduled.

## ORDER

Upon consideration of all pending motions in this action, the respective memoranda of points and authorities filed in support thereof and in opposition thereto, and upon further consideration of the argument of counsel in open Court, the entire record herein, and for the reasons briefly set forth in the Court's Memorandum issued this day, it is by the Court this 22nd day of December, 1976,

ORDERED that defendant's motion to dismiss be, and hereby is, denied; and it is further

ORDERED that the motions of defendant and intervenor-defendant for summary judgment be, and hereby are, denied; and it is further

ORDERED that plaintiff's motion for permanent injunctive relief be, and hereby is, granted; and it is further

ORDERED that defendant be, and hereby is, permanently enjoined from making award of the contract at issue herein, known as "Elevators 4, No. 1Z4144," to anyone other than plaintiff, who hereby is declared to have been the low responsive bidder for said contract.