**OLD TOWN TROLLEY TOURS OF WASHINGTON, INC.,**
Petitioner

v.

**WASHINGTON METROPOLITAN AREA TRANSIT COMMISSION,**
Respondent

**Double Decker Bus Tours W.D.C., Inc., t/a Double Decker Bus Washington, D.C., Intervenor**

No. 96–1069.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 3, 1997.

Decided Nov. 14, 1997.

Joel C. Weingarten argued the cause and filed the briefs, for petitioner.

William S. Morrow, Jr., General Counsel, Washington Metropolitan Area Transit Commission, argued the cause and filed the brief, for respondent.

Richard T. Tomar filed a brief, for intervenor Double Decker Bus Tours W.D.C., Inc.

Before: EDWARDS, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

RANDOLPH, Circuit Judge:

Old Town Trolley operates buses modeled after turn-of-the-century trolleys. The buses take visitors to and from tourist attractions around the nation's capital. Double Decker, wanting to do the same with open-air, double decker buses, applied to the Washington Metropolitan Area Transit Commission for a certificate of authority. Over Old Town's protest, the Commission granted the certificate for a probationary period and attached conditions. Old Town then filed this petition for judicial review.

The Commission's first line of defense is that Old Town has no standing to challenge Double Decker's certificate, for three reasons. One is that Old Town will suffer no "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). An affidavit filed in this court by Old Town's CEO puts this contention to rest. Old Town and Double Decker are competitors; their routes overlap; the service they provide is similar; both cater to the tourist trade. Old Town's affidavit alleges not merely that Double Decker will compete, but that it will compete unfairly by circumventing regulations and operating buses without proper inspections. Evidence developed in the administrative proceedings showed that Double Decker's commonly-controlled affiliate ran into such trouble with New York City authorities. Competitive injury is a common and acceptable basis for establishing standing to challenge agency licensing decisions. *See Associated Gas Distrib. v. FERC*, 899 F.2d 1250, 1258 (D.C.Cir. 1990); *Investment Co. Inst. v. Federal Deposit Ins. Corp.*, 815 F.2d 1540, 1543 (D.C.Cir.1987). And so we move on to the Commission's second, and related, reason for denying standing.

Increased competition, the Commission tells us, cannot give rise to a cognizable injury because Old Town has no right to be free of competition. In the jargon of standing, Old Town has not suffered "invasion of a legally protected interest" as a result of Dou-

ble Decker's entry into the D.C. tour bus market. *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136. This line of reasoning, we believe, is wide of the mark. The point is not simply that Old Town's business will suffer from increased competition. The point is that the competition will come from what Old Town considers to be an unfit competitor willing to flout the regulations with which Old Town complies at significant expense. As Old Town sees it, Double Decker's operations will threaten the safety of D.C. tourists using the service and will therefore harm the reputation of the region's tour bus industry. These interests, we believe, are sufficiently related to the Commission's regulatory aims and the laws it administers, of which more in a moment. *See Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987); *Water Transp. Ass'n v. ICC*, 819 F.2d 1189, 1195 (D.C.Cir.1987).

■ The Commission's remaining reason for opposing Old Town's standing is procedural. The Washington Metropolitan Area Transit Regulation Compact, Pub.L. No. 101–505, 104 Stat. 1300 (1990), required Old Town to present for the Commission's reconsideration any "error" it will "use[ ] as a ground for judicial review." Compact, tit. II, art. XIII, § 4(g). The Commission found that Old Town would suffer no harm (other than loss of revenue) from Double Decker's entry into the market. Old Town never asked the Commission to reconsider this finding. Therefore, the Commission argues, Old Town cannot now maintain that it has standing. This argument confuses the injury needed to establish standing with the harm the Commission addressed in its findings. The Commission said, in effect, that although a partial collapse of the tourist bus industry in the Washington area brought on by Double Decker's entry would be grounds for denying the application, Old Town had not carried its burden of showing this would happen. The threshold for showing an injury sufficient for the purposes of standing is not so high. Old Town does not have to prove that Double Decker will eventually go out of business, leaving its competitors in such a weakened state that they will be unable to fill the resulting void—does not have to prove, in other words, the "public

interest" claim Old Town advanced in the administrative proceedings. Old Town was not obligated to ask the Commission to "reconsider" whether its injury sufficed for standing purposes because the Commission never addressed that question in the first instance. Old Town's burden was to demonstrate its competitive injury to this court, which it has done through an affidavit the Commission has seen fit not to counter.

■ We therefore proceed to the merits. A preliminary question presents itself: what standard of review applies? To answer this question, some background is needed. The Commission was established by the Washington Metropolitan Area Transit Regulation Compact. Maryland, Virginia, and the District of Columbia entered into the Compact in 1960, with the consent of Congress, in order to regulate private transportation service in the metropolitan area. *See* Compact, preamble; *Democratic Cent. Comm. v. WMATC*, 84 F.3d 451, 453 (D.C.Cir.1996). In 1990, the signatories amended the Compact, in large part for the purpose of "lower[ing] barriers to market entry ... while maintaining a regional approach to transportation and keeping those controls necessary for the security of the public." *Granting the Consent of Congress to Amendments to the Washington Metropolitan Area Transit Regulation Compact: Hearing on H.J. Res. 520 Before the Subcomm. on Admin. Law and Governmental Relations of the House Comm. on the Judiciary*, 101st Cong. 35 (1990) (statement of Carlton R. Sickles, Chairman, WMATRC Review Committee). To this end, the amended Compact replaced certificates of public convenience and necessity with certificates of authority. This is the first case in which our court has been asked to pass on a Commission order granting a certificate of authority.

Congress consented to the Compact pursuant to its authority under Article I, § 10, clause 3 of the Constitution. Although an early Supreme Court decision (*People v. Central R.R.*, 79 U.S. (12 Wall.) 455, 20 L.Ed. 458 (1870)) suggested that interstate compacts could not be considered federal laws, the Court abandoned this position in *Dela-*

ware River Comm'n v. Colburn, 310 U.S. 419, 427, 60 S.Ct. 1039, 1040–41, 84 L.Ed. 1287 (1940), holding that the "construction of such a compact sanctioned by Congress" involves a federal question. Congressional consent thus "transforms an interstate compact .... into a law of the United States." Cuyler v. Adams, 449 U.S. 433, 438, 101 S.Ct. 703, 707, 66 L.Ed.2d 641 (1981); see Reed v. Farley, 512 U.S. 339, 347, 114 S.Ct. 2291, 2296–97, 129 L.Ed.2d 277 (1994). As to the Compact before us, the "judicial Power of the United States" (see Article III of the Constitution) therefore extends to cases arising under it.

While the Compact may be treated as a federal law, it does not follow that the Commission is a federal agency governed by the Administrative Procedure Act. An "agency," according to the APA's definition, "means each authority of the Government of the United States...." 5 U.S.C. § 551(1). The Commission is an authority, not of the federal government, but of Virginia, Maryland, and the District of Columbia. As a result there is a gap in need of filling. The amended Compact provides for judicial review of Commission orders here or in the Court of Appeals for the Fourth Circuit, but it does not specify any standards of review:

5. (a) Any party to a proceeding under this Act may obtain a review of the Commission's order in the United States Court of Appeals for the Fourth Circuit, or in the United States Court of Appeals for the District of Columbia Circuit, by filing within 60 days after Commission determination of an application for reconsideration, a written petition praying that the order of the Commission be modified or set aside.

(b) A copy of the petition shall be delivered to the office of the Commission and the Commission shall certify and file with the court a transcript of the record upon which the Commission order was entered.

(c) The Court shall have exclusive jurisdiction to affirm, modify, remand for reconsideration, or set aside the Commission's order.

(d) The court's judgment shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in Title 28 U.S.C. sections 1254 and 2350.

Compact, tit. II, art. XIII, § 5(a)-(d).

Of one thing we can be fairly confident—that our review should not be de novo. That would deprive the Commission's judgment of importance and would, in effect, place the court in the position of the licensing authority. Yet the granting of licenses may be a non-judicial function, outside Article III of the Constitution. See Federal Radio Comm'n v. General Elec. Co., 281 U.S. 464, 50 S.Ct. 389, 74 L.Ed. 969 (1930); STEPHEN G. BREYER & RICHARD B. STEWART, ADMINISTRATIVE LAW AND REGULATORY POLICY 59 (2d ed.1985). We may also say with some assurance that the "substantial evidence" test, at least in its APA formulation, does not fit this case. The Compact requires the Commission neither to hold hearings in these licensing proceedings nor to make findings on the record of the hearings. Even if the APA covered the Commission, the substantial evidence standard contained in 5 U.S.C. § 706(2)(E) would therefore be inapplicable. See Camp v. Pitts, 411 U.S. 138, 140–41, 93 S.Ct. 1241, 1243–44, 36 L.Ed.2d 106 (1973); 5 U.S.C. § 557(c)(3)(A).

Of the remaining standard-of-review options, we have decided to adopt by reference the standards contained in 5 U.S.C. § 706(2)(A)-(D), which provide that reviewing courts shall:

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law ...

We do so because this court had basically been following those standards in reviewing Commission actions under the pre-amended Compact. See, e.g., Bebchick v. WMATC, 805 F.2d 396, 408 (D.C.Cir.1986); D.C. Tran-

*sit Sys., Inc. v. WMATC,* 466 F.2d 394, 414 (D.C.Cir.1972); *D.C. Transit Sys., Inc. v. WMATC,* 452 F.2d 1321, 1325 (D.C.Cir.1971). Anyone familiar with these decisions—that is, anyone involved in drafting and approving revisions to the Commission's licensing authority—would likely have taken it for granted that we would follow the same course in cases arising under the amended Compact. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 378, 102 S.Ct. 1825, 1839, 72 L.Ed.2d 182 (1982). For another thing, federal judicial review of agency action according to the standards just quoted is so commonplace that, wholly aside from our past practice, it would have been natural to assume that courts would treat Commission decisions in the same manner. Finally, it is worth remembering that subsections (A) through (D) of APA § 706(2) contained no innovations. When signed into law in 1946, these provisions merely "restate[d] the present law as to the scope of judicial review." UNITED STATES DEPARTMENT OF JUSTICE, ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT 108 (1947), *reprinted in* ADMINISTRATIVE CONFERENCE OF THE UNITED STATES, FEDERAL ADMINISTRATIVE PROCEDURE SOURCEBOOK 67, 174 (2d ed.1992).

■ Was it "arbitrary" or "capricious" for the Commission to grant the certificate of authority to Double Decker? There is no disagreement among the parties about essential facts bearing on the application. Old Town's protest included allegations that New York Apple Tours, Double Decker's commonly-controlled affiliate, had been the subject of complaints filed with the New York City Department of Consumer Affairs concerning regulatory infractions. This was of potential significance. To issue a certificate of authority, the Commission must find, among other things, that the applicant will "conform to the rules, regulations, and requirements of the Commission," Compact, tit. II, art. XI, § 7(a)(i). If Double Decker's affiliate had not been conforming to another jurisdiction's regulations, one might expect Double Decker to conduct itself in the same manner. Concerned about this prospect, the Commission undertook an investigation. It found that the affiliate—Apple Tours—had indeed been sanctioned in New York City for operating buses without safety certificates. But the Commission also found that the New York authority had only recently begun enforcing the inspection requirement, that Apple Tours had brought itself into compliance, and that it had expended a considerable amount of money in doing so. When Old Town, in its application for reconsideration, provided evidence that the New York department was investigating Apple Tours for other violations, the Commission deferred action and conducted another investigation. Shortly thereafter Apple Tours settled the matter, agreeing to a fine without admitting any wrongdoing.

There is no doubt that the poor record of the New York affiliate raised serious questions regarding Double Decker's fitness. And there is no doubt that the Commission treated the matter seriously—but not seriously enough by Old Town's lights. While we do not agree with the Commission's argument that it would have been arbitrary for it to deny, or on reconsideration, rescind Double Decker's certificate of authority, neither do we agree with Old Town's view that it was arbitrary for the Commission to give Double Decker permission to operate. Licensing proceedings such as this involve predictive judgments. *See FCC v. National Citizens Comm. for Broad.,* 436 U.S. 775, 813–14, 98 S.Ct. 2096, 2121–22, 56 L.Ed.2d 697 (1978). The Commission considered the "relevant factors," indeed it considered them very carefully and at length. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). It did not take account of extraneous factors and the explanation it provided for its action had evidentiary support. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983). As to the Commission's ultimate conclusion, we detect no "clear error of judgment" on its part. *Citizens to Preserve Overton Park,* 401 U.S. at 416, 91 S.Ct. at 824. Far from disregarding the New York situation, the Commission fashioned its order in response to what had occurred there. It placed Double Decker on probation for one year, during which the company had to present each of its vehicles

to the Commission's staff for inspection, and to report any infraction of Apple Tours' settlement agreement with the New York authority. If, in this period, Apple Tours' operating authority is revoked or suspended, that would be a sufficient ground for suspending or revoking Double Decker's. One may debate the Commission's judgment that these measures were sufficient. Old Town does. But the judgment, which embodies a prediction about Double Decker's future behavior in view of the conditions imposed on its first year of operations, does not constitute an abuse of the Commission's authority or arbitrary and capricious agency action.

Old Town's remaining contentions have been considered and found wanting.

The petition for judicial review is denied.

*So ordered.*