# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 23, 2021   Decided October 22, 2021

No. 21-7008

SCHINDLER ELEVATOR CORPORATION, A NEW JERSEY
CORPORATION,
APPELLANT

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, AN
INTERSTATE AGENCY CREATED BY COMPACT AND KONE INC.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-03157)

———

*H. Christopher Bartolomucci* argued the cause for appellant. With him on the briefs was *Lawrence M. Prosen*.

*Attison L. Barnes, III* argued the cause for appellee Washington Metropolitan Area Transit Authority. With him on the brief were *Stephen J. Obermeier* and *Jeremy J. Broggi*.

*Daniel W. Wolff* and *Lyndsay A. Gorton* were on the brief for appellee Kone Inc.

Before: HENDERSON and JACKSON, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: In response to a Request for Proposal (RFP) from the Washington Metropolitan Area Transit Authority (WMATA), Schindler Elevator Corporation submitted a bid to replace the escalators throughout WMATA's Metro Rail System stations. WMATA rejected the proposal, over Schindler's protests, and awarded the contract to another company. Schindler sued, alleging that WMATA arbitrarily eliminated it from consideration even though it complied with the RFP's requirements and offered a better value than that proposed by the awardee. The district court dismissed *sua sponte* Schindler's complaint for lack of subject matter jurisdiction on the ground that WMATA, an interstate compact entity, had not waived its sovereign immunity. We agree and affirm the district court's dismissal of Schindler's complaint because neither the interstate compact creating WMATA, the Authority's procurement documents nor the Administrative Procedure Act (APA) waives WMATA's sovereign immunity for challenges to procurement decisions like Schindler's.

**I.**

Created in 1966 through an interstate compact signed by Maryland, Virginia and the District of Columbia and approved by the Congress, WMATA operates a mass transit system for the District of Columbia and surrounding Virginia and Maryland suburbs. Washington Metropolitan Area Transit Authority Compact, Pub. L. No. 89–774, 80 Stat. 1324 (1966) (WMATA Compact); s*ee also* U.S. CONST. art. I, § 10, cl. 3 ("No State shall, without the Consent of Congress, . . . enter into any Agreement or Compact with another State."); MD. CODE TRANSP. § 10-204 (codifying WMATA Compact); VA. CODE ANN. § 33.2-3100 (same); D.C. CODE ANN. § 9-1107.01

(same). Schindler is a global manufacturer and service provider of elevators, escalators and moving walkways.[1] WMATA and Schindler have enjoyed a longstanding business relationship and have worked together on numerous escalator maintenance and improvement projects at stations throughout WMATA's Metro Rail System.

On January 30, 2020, WMATA issued its RFP soliciting bids to replace aging escalators in the Metro Rail System. The solicitation sought proposals to remove the existing escalators and manufacture and install new ones along with their associated equipment and components. The RFP also described the required technical specifications for each part of the removal and installation project. It explained that WMATA intended to evaluate proposals based on technical merit and price according to its Procurement Procedures Manual (PPM) and then award the contract to the bidder that offered the best value.

Schindler submitted its proposal to WMATA on May 6, 2020, to which WMATA responded shortly thereafter with a request for clarification seeking further explanation and documentation addressing various aspects of Schindler's proposal. Schindler replied a few days later, supplying the additional requested information and answering WMATA's questions. Later that summer, however, WMATA informed Schindler that its proposal did not satisfy the RFP's requirements and that it had been eliminated from consideration for the award.

Following its disqualification, Schindler requested a debriefing and filed an initial protest regarding WMATA's

---

[1] We accept as true all of the factual allegations contained in the complaint. *KiSKA Constr. Corp. v. WMATA*, 321 F.3d 1151, 1157 (D.C. Cir. 2003).

decision. WMATA explained to Schindler during the debriefing call that its proposal was unacceptable because it failed to meet certain criteria required by the RFP. The deficiencies included (1) proposing work on four locations where more than one escalator would be replaced simultaneously, (2) recommending the modification of WMATA's pit size requirements to allow for the installation of certain mechanical features and (3) failing to demonstrate that its key personnel met the required qualifications. Schindler pushed back and responded to each of the purported deficiencies but WMATA kept to its previous determination that Schindler's proposal did not comply with the RFP.

Undeterred, Schindler filed a supplemental protest. In both its initial and supplemental protest filings, Schindler detailed the alleged errors WMATA made in reaching its determination to reject the proposal and Schindler's own efforts to respond to WMATA's concerns and satisfy the requirements. But WMATA never budged. On October 2, 2020, WMATA issued its Final Decision denying both Schindler's initial protest and supplemental protest. A week later, WMATA awarded the contract to Kone, Inc., even though, according to Schindler, Kone's proposal neither satisfies the RFP criteria nor provides the best value for the project.

Schindler then sued WMATA in federal district court, alleging that WMATA improperly disqualified Schindler from consideration for the contract and awarded the grant to Kone. It sought a declaratory judgment, an order directing specific performance by WMATA to cancel the Kone award and either award the contract to Schindler or reevaluate its proposal and other injunctive relief.

The district court denied Schindler's motion for a preliminary injunction and *sua sponte* dismissed Schindler's

complaint for lack of jurisdiction. *Schindler Elevator Corp. v. WMATA*, 514 F. Supp. 3d 197, 201 (D.D.C. 2020). It recognized that WMATA is protected by sovereign immunity as an interstate compact entity and held that neither the WMATA Compact nor the APA waives WMATA's sovereign immunity for Schindler's procurement challenge. *Id.* at 203, 212. More specifically, it found that the WMATA Compact's limited waiver of sovereign immunity does not extend to Schindler's procurement challenge, that WMATA's procurement documents do not expand the waiver and that the APA does not waive immunity because WMATA is not a federal agency thereunder. *Id.* at 206–12. Schindler appealed.

## II.

Although the district court's jurisdiction *vel non* is ultimately the subject of this appeal, "a federal court always has jurisdiction to determine its own jurisdiction." *Brownback v. King*, 141 S. Ct. 740, 750 (2021) (quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002)); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature."). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291, as Schindler timely appealed from a final order of the district court. We review de novo the district court's dismissal of Schindler's complaint for lack of subject matter jurisdiction. *KiSKA Constr. Corp. v. WMATA*, 321 F.3d 1151, 1157 (D.C. Cir. 2003).

## III.

WMATA is the creation of an interstate compact entered into by Maryland, Virginia and the District of Columbia. *Id.* at 1158. We have repeatedly recognized that it is accordingly vested with the sovereign immunities, including state sovereign immunity, of the Signatories to the WMATA Compact. *See, e.g.*, *id.*; *Watters v. WMATA*, 295 F.3d 36, 39

(D.C. Cir. 2002). And "unless WMATA's sovereign immunity has been waived, the district court lacks jurisdiction to enter a judgment against" it. *Watters*, 295 F.3d at 39–40.

Schindler maintains there are several avenues by which WMATA's sovereign immunity could be waived here: the WMATA Compact, WMATA's procurement documents, including the PPM, the RFP and the Final Decision denying Schindler's protests, and the APA. We examine each in turn, concluding that WMATA did not waive sovereign immunity for the type of procurement challenge at issue.

**A.**

"In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated by the most express language or by such overwhelming implications from the [text] as [will] leave no room for any other reasonable construction." *Morris v. WMATA*, 781 F.2d 218, 221 (D.C. Cir. 1986) (second alteration in original) (internal quotation marks omitted) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)). Maryland, Virginia and the District of Columbia undoubtedly waived WMATA's sovereign immunity in the Compact—but in only a narrow set of circumstances which do not include Schindler's procurement challenge.

Section 80 of the WMATA Compact provides that WMATA "shall be liable for its contracts and for its torts . . . committed in the conduct of any proprietary function, . . . but shall not be liable for any torts occurring in the performance of a governmental function." 80 Stat. 1350. We have repeatedly recognized that this waiver of WMATA's sovereign immunity is "limited." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1138 (D.C. Cir. 2015); *KiSKA Constr. Corp.*, 321 F.3d at 1158. Moreover, we have emphasized that this limited

waiver is exclusively "contained in" Section 80. *Morris*, 781 F.2d at 221. And we are not alone, as our sister circuit that reviews claims brought against WMATA has also recognized. *See, e.g.*, *Lizzi v. Alexander*, 255 F.3d 128, 133 (4th Cir. 2001) (scope of WMATA's consent to be sued is "specifically and expressly delineate[d]" in section 80), *overruled in part on other grounds by Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721 (2003). Schindler acknowledges that its challenge sounds in neither contract nor tort. Therefore, section 80's limited waiver of sovereign immunity is inapplicable and cannot provide subject matter jurisdiction for Schindler's challenge.

Contrary to Schindler's assertions, no other provision of the WMATA Compact waives WMATA's sovereign immunity or expands the limited waiver contained in section 80 to include these types of procurement challenges. Consider section 12 of the Compact, which provides that WMATA may "[s]ue and be sued." 80 Stat. 1328. It gives no aid to Schindler because "we have held that provision to extend only as far as the more specific (and partial) waiver of sovereign immunity contained in section 80," which, as we have just noted, does not apply here. *Watters*, 295 F.3d at 40 (citing *Morris*, 781 F.2d at 221 n.3 ("reliance on the 'sue and be sued' clause would be particularly inappropriate in this case where another section of the Compact, section 80, specifically and expressly delineates the scope of WMATA's consent to be sued")).

Section 81 specifies that "[t]he United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland and Virginia, of all actions brought by or against the Authority." 80 Stat. 1350. But this provision does not rescue Schindler because it is not a waiver of immunity. We explained in *Morris* that "[s]ections 80 and 81 should be read as parts of a coherent whole." 781 F.2d at 221. In other

words, section 81's grant of jurisdiction extends only to claims for which sovereign immunity is waived in section 80. The only purpose of section 81 is to confer on federal courts jurisdiction of suits against WMATA that otherwise, in the absence of diversity jurisdiction, would be limited to state court. It does not expand section 80's waiver.

We can say the same about section 73, which addresses WMATA's procurement policies. 80 Stat. 1348–49. Waiver is found "only where stated by the most express language or by such overwhelming implications from the [text] as [will] leave no room for any other reasonable construction." *Morris*, 781 F.2d at 221 (second alteration in original) (internal quotation marks omitted) (quoting *Edelman*, 415 U.S. at 673). This test is a "stringent one" and waiver must be conveyed through a "'clear declaration' of [an] intent to submit to federal court jurisdiction." *Barbour v. WMATA*, 374 F.3d 1161, 1163 (D.C. Cir. 2004) (citation omitted). Section 73 makes no reference to a waiver of sovereign immunity or amenability to suit for WMATA's procurement decisions, nor does it indicate that WMATA can be held liable for its procurement decisions as it can be for the contract and tort actions listed in section 80. Thus, section 73 fails to meet the "stringent" test for an express waiver.

Schindler points to several cases in the District of Columbia area federal courts for the proposition that these courts have jurisdiction to entertain challenges to WMATA procurement decisions. It relies primarily on *Elcon Enterprises, Inc. v. WMATA*, 977 F.2d 1472 (D.C. Cir. 1992), and *Seal & Company, Inc. v. WMATA*, 768 F. Supp. 1150 (E.D. Va. 1991). In *Elcon*, we considered a challenge to a WMATA procurement decision without questioning the district court's jurisdiction or suggesting WMATA's sovereign immunity barred the suit. 977 F.2d at 1475, 1478–80. And in *Seal*, the

district court asserted subject matter jurisdiction over a challenge to a WMATA contract award under section 81 of the WMATA Compact. 768 F. Supp. at 1151–52. But the *Elcon* court neither analyzed nor discussed WMATA's sovereign immunity and the district court in *Seal* did not mention the limited waiver of sovereign immunity in section 80. What's more, neither case examines our extensive reasoning in *Morris*. 781 F.2d at 221. We cannot consider these cases persuasive, much less binding, authority on the issue of federal court jurisdiction over WMATA procurement decision challenges. To do so would contravene the longstanding principle that "[w]hen a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011); s*ee also, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("We have often said that drive-by jurisdictional rulings . . . have no precedential effect."); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("Even as to our own judicial power or jurisdiction, this Court has followed the lead of Chief Justice Marshall who held that this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed *sub silentio*.").

The same can be said with respect to *Otis Elevator Co. v. WMATA*, 432 F. Supp. 1089 (D.D.C. 1976), *The Bootery, Inc. v. WMATA*, 326 F. Supp. 794 (D.D.C. 1970), and other more recent district court decisions cited by Schindler that rely on *Elcon* and *Seal*. Accordingly, Schindler's argument that the Congress ratified its interpretation of these cases when it amended the WMATA Compact in 1996 fails because these cases did not *hold* that WMATA waived its sovereign immunity for procurement challenges. We thus conclude that the WMATA Compact does not waive WMATA's sovereign immunity for Schindler's claim.

WMATA asserts that this conclusion resolves the case. But our inquiry does not end there. Next, we consider whether WMATA waived its sovereign immunity through its PPM, RFP or Final Decision denying Schindler's protests.

As an initial matter, the parties dispute whether and how WMATA can waive its sovereign immunity apart from the waiver contained in the text of the WMATA Compact. But we need not decide the extent to which WMATA can waive its sovereign immunity for claims beyond the narrow set of contract and tort actions expressly delineated in section 80, because assuming WMATA may waive immunity for claims beyond those delineated in section 80, it did not do so here.

Schindler contends that WMATA waived its sovereign immunity in three separate documents. First, Chapter 17 of WMATA's PPM establishes the procedures for the administrative resolution of protests during the procurement process and provides that federal and local courts in Maryland, Virginia and the District of Columbia "have jurisdiction over court actions concerning protest decisions." PPM § 17-10(d). Second, the RFP at issue states that the federal and local courts in these jurisdictions are the "judicial authorities having jurisdiction over court actions concerning protest decisions." RFP § 00 20 01(T)(5). WMATA's solicitation also included a "Choice of Law" provision instructing that "any and all claims" against WMATA and arising under the RFP "shall be heard and determined" in either the federal or local courts "that maintain jurisdiction over such claims." RFP § 00 79 00(b). Third, WMATA's Final Decision denying Schindler's protests advises that "jurisdiction in any matter contesting WMATA's procurement decisions is governed by" section 81 of the WMATA Compact.

We require a "clear declaration" of an intent to waive sovereign immunity. *Barbour*, 374 F.3d at 1163. But the jurisdiction-granting language in these three documents falls far short of this "stringent" requirement. *Id.* Each of the provisions closely resembles the jurisdiction-granting language of section 81 of the WMATA Compact, which again specifies that "[t]he United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland and Virginia, of all actions brought by or against the Authority." 80 Stat. 1350. But we know from our earlier discussion of the Compact that this alone does not achieve a waiver of sovereign immunity. *See supra* III.A. WMATA's sovereign immunity was waived in the Compact only through the "clear declaration" of waiver in section 80.

The PPM, the RFP and the Final Decision all lack such a "clear declaration." Schindler insists that a clear waiver exists because each of these documents expressly references "protest decisions" or "procurement decisions." We believe that Schindler's emphasis is misplaced. The mere inclusion of these terms does not constitute a "clear declaration" of a waiver of sovereign immunity for all aspects of WMATA procurement decisions. Compare the language of the procurement documents to the waiver in section 80, providing that WMATA "*shall be liable* for its contracts and for its torts . . . committed in the conduct of any proprietary function." 80 Stat. 1350 (emphasis added). We attach no talismanic significance to the particular phrase "shall be liable" but Schindler cannot point to anything nearly as direct in the three WMATA procurement documents. Rather, a more logical interpretation of these documents would view the listed courts as having jurisdiction of claims as to which WMATA has clearly waived sovereign immunity and which implicate its procurement decisions. The Final Decision supports this reading because it states expressly that "jurisdiction in any matter contesting WMATA's

procurement decisions is governed by" section 81 of the WMATA Compact," which, as we know, leads directly back to the limited waiver in section 80.

In sum, we do not find a clear declaration of an intent to waive sovereign immunity in WMATA's PPM, RFP or Final Decision denying Schindler's protests.

**B.**

We turn finally to the Administrative Procedure Act. The APA waives the immunity of the federal government and provides for judicial review of agency action in federal court. *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action . . . is entitled to judicial review thereof."); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186 (D.C. Cir. 2006) (APA waives sovereign immunity for "[a]n action in a court of the United States seeking relief other than money damages." (quoting 5 U.S.C. § 702)); *Chamber of Com. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (holding the "APA's waiver of sovereign immunity applies to any suit whether under the APA or not"). The statute defines "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency" and provides a nonexclusive list of entities—such as the Congress, the courts of the United States and the government of the District of Columbia—that do not fall under this definition. 5 U.S.C. § 701(b)(1). The APA "waives immunity only when the defendant falls within that category." *Trudeau*, 456 F.3d at 187.

We must therefore answer the question whether WMATA is a federal agency under the APA. Our court has been less than clear on this issue but we hold today that WMATA, as an interstate compact entity, is not a federal agency within the scope of the APA.

This should come as no surprise because we and our sister circuits have reached the same conclusion with respect to other entities created under the Constitution's Interstate Compact Clause. The Washington Metropolitan Area Transit Commission (WMATC) "was established by the Washington Metropolitan Area Transit Regulation Compact . . . to regulate private transportation service in the metropolitan area." *Old Town Trolley Tours of Wash., Inc. v. WMATC*, 129 F.3d 201, 203 (D.C. Cir. 1997). Granted, recognizing that congressional approval of the compact "transforms an interstate compact . . . into a law of the United States" and thus confers on it the status of federal law, "it does not follow that the Commission is a federal agency governed by the [APA]." *Id.* at 204 (quoting *Cuyler v. Adams*, 449 U.S. 433, 438 (1981)). In reaching this conclusion, we emphasized that the WMATC "is an authority, not of the federal government, but of Virginia, Maryland, and the District of Columbia"—the Signatories to the Compact. *Id.* That the District of Columbia, a federal territory ultimately controlled by the Congress, is a Signatory did nothing to alter this result.[2] That rationale applies with equal force to WMATA. *Cf. Archdiocese of Wash. v. WMATA*, 897 F.3d 314, 333 (D.C. Cir. 2018) (observing that WMATA "is an instrumentality and agency of states" in the context of the Religious Freedom Restoration Act).

---

[2] Schindler cites *Old Town Trolley* for the proposition that APA standards of review should apply to challenges to WMATA procurement decisions like this one. That is of no moment here because *Old Town Trolley* expressly held that the WMATC is not a federal agency under the APA. 129 F.3d at 204. The court did not rely on the APA to find a waiver of the WMATC's sovereign immunity. Rather, the interstate compact creating the WMATC explicitly provided for judicial review of the WMATC orders in question, distinguishing it from the WMATA Compact we examine today. *Id.*

Other courts agree, having held that interstate compact entities are not federal agencies under the APA. In arriving at this conclusion, they relied heavily on the fact that the entities were created through an interstate compact. *See, e.g.*, *Kerpen v. Metro. Wash. Airports Auth.*, 907 F.3d 152, 159–60 (4th Cir. 2018) (the entity in question is a "textbook example of an interstate compact" and "[i]nterstate compacts . . . are not federal entities"), *cert. denied* 140 S. Ct. 132 (2019); *New York v. Atl. States Marine Fisheries Comm'n*, 609 F.3d 524, 532–33 (2d Cir. 2010) (recognizing that an interstate compact entity is not a federal agency under the APA despite the Congress's role in approving the compact and the absence of interstate compacts from the list of entities exempted from the APA's definition of "agency"). We see no reason to depart from this reasoning.

Once again, Schindler leans on the dual lampposts of *Elcon* and *Seal* for support. However, as before, *Elcon* and *Seal* are far from illuminating. *Elcon* treated WMATA as if it were a federal agency in a challenge to a WMATA procurement decision. 977 F.2d at 1480. But the court there did so without reasoned analysis, instead "assum[ing] *arguendo*" that WMATA was a federal agency under the APA "for the purposes of this appeal." *Id.* It expressly found it "unnecessary to resolve the issue." *Id.* Similarly, *Seal* concluded that "Congress intended WMATA to conduct its procurements as a federal agency would." 768 F. Supp. at 1157. But it also made clear that WMATA "is not a *federal* agency. Rather, it is 'an instrumentality and agency of each of the signatory parties— the District of Columbia, Maryland, and Virginia'" and thus "not subject to the APA." *Id.* at 1154 (quoting *WMATA v. One Parcel of Land*, 706 F.2d 1312, 1314 (4th Cir. 1983), *cert. denied*, 464 U.S. 893 (1983)). Accordingly, as the district court explained, Schindler's reliance on more recent district court cases that in turn rely heavily on *Elcon* and *Seal* lends little, if

any, support to its cause. *See Schindler Elevator Corp.*, 514 F. Supp. 3d at 205. WMATA, created through an interstate compact, is therefore an instrumentality and agency of its Signatories. It is not a federal agency under the APA. As such, WMATA's sovereign immunity has not been waived.[3]

Fashioned under the Constitution's Interstate Compact Clause, WMATA has since its inception been vested with the sovereign immunity of the Signatories that agreed to create it—including Maryland's and Virginia's state sovereign immunity. Absent a waiver of WMATA's sovereign immunity, a district court lacks jurisdiction over claims brought against it. This much is clear. Although the WMATA Compact waives sovereign immunity for a narrow set of claims not applicable here, nothing in WMATA's procurement documents purports to expand that waiver to challenges to procurement decisions like the one Schindler presses. Nor does the APA effect a waiver because WMATA is not a federal agency under that statute. Accordingly, the district court correctly dismissed Schindler's complaint for lack of subject matter jurisdiction. We affirm.

*So ordered.*

---

[3] In its opening brief on appeal, Schindler argues that it has a cause of action under the Maryland, Virginia and District of Columbia analogues to the federal APA. It concedes, however, that it "did not expressly refer" to these statutes in its complaint and did not bring them to the district court's attention until its reply brief. Schindler has thus forfeited this argument. *Solomon v. Vilsack*, 763 F.3d 1, 13 (D.C. Cir. 2014) (recognizing that an argument made for the first time in a reply brief in district court is forfeited).