**NORTHERN INDIANA PUBLIC
SERVICE COMPANY,
Petitioner,**

v.

**FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.**

No. 90–1528.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 27, 1991.

Decided Jan. 21, 1992.

Drexel D. Journey, with whom Patricia D. Ryan, Washington, D.C., was on the brief, for petitioner.

Robert K. Johnson, Indianapolis, Ind., for intervenor, Indiana Office of Utility Consumers Counselor.

Samuel Soopper, Atty., F.E.R.C., with whom William S. Scherman, Gen. Counsel, and Jerome M. Feit, Solicitor, Washington, D.C., were on the brief, for respondent.

Clifford M. Naeve, with whom John N. Estes, III, Washington, D.C., and Cheryl M. Foley, Plainfield, Ind., were on the brief, for intervenor, PSI Energy, Inc. Stephen G. Kozey, Washington, D.C., also entered an appearance for intervenor.

Earle H. O'Donnell, Washington, D.C., entered an appearance for intervenors, Ad Hoc Committee for a Competitive Elec. Supply System and American Iron and Steel Institute.

Before MIKVA, Chief Judge, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

The Federal Energy Regulatory Commission approved an open-access tariff filed by PSI Energy, Inc., an electric utility serving parts of Indiana. Northern Indiana Public Service Company (NIPSCO), a neighboring utility whose transmission facilities are connected to PSI's, contests FERC's approval, arguing that the Commission abdicated its statutory obligations, acted with-

out substantial evidence, and employed inadequate procedures.

We dismiss NIPSCO's claims as not yet ripe. NIPSCO's arguments all flow from the company's belief that open-access transmissions through PSI would overstress NIPSCO's facilities, imposing costs on the utility and degrading the reliability of electric service to its customers. But the Commission tells us that the orders do not authorize any specific transactions, approving merely the concept and outline of open-access transmission through PSI. Under the challenged orders, as FERC explains them to us, before any utility can use PSI's facilities to transmit electricity, the parties will have to file a service agreement with the Commission. NIPSCO, FERC promises, will be able to raise its objections to the proposed open-access transmission at that time, and FERC's decision whether to accept the filing will be subject to judicial review.

Although FERC's orders are ambiguous, we find the Commission's interpretation of its orders reasonable and so we accept it. Because NIPSCO will be able to raise its objections in a far less speculative setting than the one before us, and because NIPSCO has not convinced us that delay would cause it harm, we decline to review NIPSCO's claims at this time.

## I. BACKGROUND

NIPSCO and PSI, which was formerly named Public Service Company of Indiana, Inc., are neighboring utilities whose transmission grids are interconnected, allowing electricity to flow back and forth between them. NIPSCO and PSI are also connected to other large electric utilities in and outside Indiana, forming part of a nationwide transmission grid.

An interconnected system for transmitting electricity has the benefit of allowing utilities to buy electricity from one another when, for example, the demand on a utility's power exceeds its ability to supply it, or when it is less expensive for a utility to purchase electricity from a neighbor than to self-generate.

An interconnected system in which utilities exchange electricity also has its drawbacks. Electricity flowing from one utility to another can enter, and possibly overload, the facilities of neighboring utilities, potentially causing brownouts and blackouts. That happens because electricity cannot be directed along specific transmission lines within the grid. When electricity reaches an intersection of several alternative transmission paths, it will flow along many if not all of them, guided by the laws of physics rather than the intention of the parties to the sales contract. Flows of power along multiple alternative paths are called "loop flows" or "parallel path flows." NIPSCO is concerned that loop flows generated by PSI's open-access program will wreak havoc with NIPSCO's transmission system, imposing on it substantial costs and harming its ability to serve its customers reliably.

On September 25, 1989, PSI filed with FERC the proposed tariffs that the Commission eventually approved with modifications and that NIPSCO now challenges. Under PSI's proposed rate tariff (designated "FS–1"), the utility would sell firm power at market rates, instead of cost. NIPSCO does not challenge FERC's approval of market-based pricing. PSI also proposed an open-access transmission tariff. PSI proposed and FERC approved open access so that the utility would not have market dominance over prospective FS–1 customers. *Public Service Company of Indiana, Inc.*, 51 FERC ¶ 61,367 at 62,186, 62,190–93. Under PSI's open-access tariff, the utility obliged itself to give other utilities access to PSI's transmission system upon request and at specified rates, as long as those utilities meet the criteria set forth in the tariff. *Id.* at 62,186. Access to PSI's facilities would ensure that suppliers other than PSI could sell electricity to prospective FS–1 customers.

On December 18, 1989, FERC suspended the FS–1 rate schedule, granted NIPSCO's motion to intervene, and requested comments on PSI's proposal and on a preliminary FERC staff analysis. *Public Service Company of Indiana*, 49 FERC ¶ 61,346 (1989). In its comments, NIPSCO urged

rejection of the open-access tariff. The utility's basic contention was, and remains, that open access transfers through PSI will result in loop flows that would place severe burdens on NIPSCO's transmission system, imposing costs and reducing the reliability of the service it offers customers. Approving the open-access tariff despite the effect on the reliability of NIPSCO's electric service, the utility argued, would be inconsistent with the Commission's statutory obligation to assure that rates are "just and reasonable" under the Federal Power Act, 16 U.S.C. §§ 824d(a)–(b) & 824e(a). NIPSCO also complained that FERC's procedures for considering PSI's proposed tariffs were inadequate. On March 5, 1990, NIPSCO requested that FERC abandon the "paper hearing" procedures promulgated in the December order and replace them with "trial type procedures" including full hearings; it also asked that FERC revise the original schedule to allow more time for factual development.

On June 28, 1990, FERC issued Opinion 349, the first of the orders NIPSCO challenges. *Public Service Company of Indiana, Inc.*, 51 FERC ¶ 61,367 (1990). In Opinion 349, the Commission approved the open-access transmission tariff as well as the FS–1 rate schedule. FERC rejected NIPSCO's arguments that open access would lead to reliability problems. *Id.* at 62,210–12. And, as for NIPSCO's procedural arguments, FERC concluded that oral testimony and cross examination were unnecessary in this case. *Id.* at 62,217–19.

NIPSCO filed a petition for rehearing and submitted new written and videotaped evidence incorporating case studies and analyses to demonstrate the likelihood of reliability and financial problems under PSI's open-access program. In Order 349–A, the second of the orders challenged in this case, FERC denied NIPSCO's request for rehearing. *PSI Energy, Inc.*, 52 FERC ¶ 61,260 (1990). The Commission termed "insufficient and unacceptable" NIPSCO's reasons for submitting new evidence for the first time on rehearing. *Id.* at 61,969. FERC nevertheless addressed the merits of the utility's motion for rehearing and rejected the utility's arguments based on the newly submitted evidence as "conclusory and speculative." *Id.* at 61,970.

NIPSCO now petitions for review of Orders 349 and 349–A. The utility also lists as a "ruling under review" the third and final FERC order in the same docket, *PSI Energy, Inc.*, 53 FERC ¶ 61,131 (1990). But we see nothing in that order relevant to NIPSCO's claims and we do not discuss it further.

## II. ANALYSIS

 Settled principles of ripeness require that we postpone review of administrative decisions where (1) delay would permit better review of the issues while (2) causing no significant hardship to the parties. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474, 480 (D.C.Cir.1986), *cert. denied sub nom. New York v. Dole*, 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 800 (1987). The consequences of postponing review in this case turn on the meaning of the challenged orders. If, as NIPSCO contends, the orders authorize PSI to provide open-access service without further FERC action, then NIPSCO's claims probably would be ripe. Having alleged that open-access transmissions through PSI will overload its facilities and reduce the reliability of its electric service, NIPSCO is likely entitled to judicial review of its claims before PSI actually engages in any open-access transactions. The risk of harm to NIPSCO would outweigh the benefits to the court and the agency of postponing review.

If, however, as FERC insists, the orders approve merely the concept and outline of open-access but do not give PSI final authorization to conduct any open-access transactions, we think NIPSCO's claims would not be ripe. PSI has not yet engaged in any open-access transmissions, and the record reveals no specific proposed transactions. If there are no open-access transactions (or only those with a negligible effect on NIPSCO), NIPSCO's objections might vanish and judicial review

might be unnecessary—factors weighing in favor of deferring review under the first prong of the *Abbott Labs* test. *See Continental Air Lines, Inc. v. CAB,* 522 F.2d 107, 125 (D.C.Cir.1974). More important, review now would have to be based on predictions about what transactions PSI would conduct under the open-access program. Delaying review of NIPSCO's claims would permit hard facts about the impact of loop-flows on NIPSCO's facilities to replace speculation about the injury NIPSCO possibly faces. The Court's deliberations would certainly "benefit from letting the question arise 'in some more concrete and final form.'" *State Farm,* 802 F.2d at 479 (quoting *Continental Air Lines,* 522 F.2d at 125).

Delay, moreover, would not cause NIPSCO undue hardship under FERC's interpretation of its orders, counseling postponement under the second prong of the *Abbott Labs* test. PSI, under the Commission's interpretation of its orders, cannot engage in any open-access transactions without first filing a tariff that NIPSCO can challenge. NIPSCO argues that there will be insufficient time to attack PSI's proposed transaction, but we are unmoved. NIPSCO claims already to have the data necessary to prove that open-access transmissions through PSI will overload its facilities. And, in any event, nothing prevents NIPSCO from asking FERC to delay its acceptance of PSI's filing until the Commission considers the transaction's consequences. NIPSCO, again, could obtain review of adverse FERC decisions, and, as the Commission points out, NIPSCO could also file a tariff under § 205 to recover additional costs from PSI.

To be sure, even under FERC's interpretation of its orders, delay could harm NIPSCO if the utility had to spend money to prepare for the possibility of open-access transactions. Such hardship would ripen NIPSCO's claims. *See Abbott Laboratories,* 387 U.S. at 152–53, 87 S.Ct. at 1517–18; *Mt. Wilson FM Broadcasters, Inc. v. FCC,* 884 F.2d 1462, 1465 (D.C.Cir.1989). But we think there are "too many 'ifs' in the asserted causal chain linking the agency's action to the alleged hardship," *State Farm,* 802 F.2d at 480, and we conclude that, under FERC's reading of its orders, delay would not cause NIPSCO undue hardship.

Looking at the challenged orders alone, their real-world effect is unclear. NIPSCO's interpretation of the orders—that they contain final authorization for PSI to transmit electricity under an open-access program—is plausible, particularly given the Commission's decision to address in its orders the merits of NIPSCO's claims. During the proceedings that led to the orders, NIPSCO argued that open-access transmission through PSI would, because of loop-flows, interfere with NIPSCO's transmission facilities and degrade the reliability of the utility's electric service. Rather than responding that NIPSCO's concerns are more appropriately considered in future FERC proceedings involving specific proposed open-access transactions, FERC in Order 349 addressed the merits of NIPSCO's testimony, offering several reasons "why PSI's proposal ... will not lead to a degradation of reliability." 51 FERC at 62,211. FERC stated that PSI's proposal would not exacerbate ordinarily occurring loop flows; that any potential reliability effects could be addressed with existing standard load-flow and stability analyses; that PSI will conduct necessary load flow studies to determine whether existing capacity can accommodate a particular transmission request; and that existing private arrangements could deal with NIPSCO's reliability concerns. *Id.* at 62,211–12. In Order 349–A, FERC also "address[ed] the merits" of newly submitted NIPSCO testimony, rejecting NIPSCO's additional arguments that open-access would overstress its facilities. 52 FERC at 61,970.

The fact that FERC addressed the merits of NIPSCO's objections suggests that the challenged orders might amount to more than FERC now says. But other language in the orders does support FERC's current reading of them—a reading that would allow NIPSCO to raise its concerns before the start of any open-access transactions. Specifically, in Order 349–A, the Commission stated: "Parties must enter into indi-

vidual service agreements and file them with the Commission prior to receiving long-term, firm transmission service." 52 FERC at 61,970.

Even that language is not self-interpreting. The language does not rule out the possibility that FERC's acceptance of the filings will be a mere formality and that the Commission will not consider NIPSCO's objections to specific transactions. But the Commission has assured us in its brief and at oral argument that Orders 349 and 349–A not only require PSI to file service agreements with FERC, but also allow NIPSCO to challenge them—to argue that the Commission should reject PSI's proposed transaction in light of the burden placed on NIPSCO, and to obtain judicial review of adverse decisions. Because the Commission's interpretation of its orders is reasonable, we accept it. *Cf. Martin v. OSHRC,* —— U.S. ——, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991).

And because we accept the Commission's interpretation of its orders, we believe NIPSCO's claims are premature. As we explained, postponing review until a specific transaction is proposed will render NIPSCO's objections more fit for review and, because PSI cannot launch any open-access transactions without giving NIPSCO an opportunity to challenge them, delay will not harm NIPSCO. Under the two-prong *Abbott Labs* test, therefore, NIPSCO's claims are not ripe.

We turn, finally, to the Commission's request that we dismiss NIPSCO's petition on the ground that NIPSCO lacks standing because it was not "aggrieved" under § 313(b) of the Federal Power Act, 16 U.S.C. § 825*l* (b). Because we find that NIPSCO's claims are yet unripe, we need not consider the standing issue. *See Transcontinental Gas Pipe Line Corp. v. FERC,* 866 F.2d 477, 480 n. 2 (D.C.Cir. 1989).

### III. CONCLUSION

We accept the Commission's statement that Orders 349 and 349–A are not self-implementing—that, in other words, they amount merely to tentative approval of PSI's open-access transmission program. Accordingly, PSI cannot engage in any individual open-access transactions without first filing a service agreement with FERC. NIPSCO can challenge PSI's filings before the Commission, raising its reliability concerns in the context of a specific transaction. If the Commission accepts the filing, NIPSCO can seek review in this Court. Because delay will enhance judicial review while causing no undue harm, NIPSCO's claims are not ripe. Its petition, therefore, is

*Dismissed.*