**OMYA, INC., Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 96–1176.

United States Court of Appeals, District of Columbia Circuit.

Argued April 11, 1997.

Decided April 25, 1997.

---

Edward V. Schwiebert, Rutland, VT, argued the cause and was on the briefs for petitioner. William J. Madden, Jr., Washington, DC, entered an appearance.

Jill Hall, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief was Joseph S. Davies, Acting Solicitor.

John W. Kessler, Dayton, OH, Assistant Attorney General, State of Vermont, argued the cause for amicus curiae State of Vermont and the National Trust for Historic Preservation. With him on the brief were J. Wallace Malley, Jr., Acting Attorney General, and Ronald A. Shems, Assistant Attorney General. Paul W. Edmondson, Washington, DC, entered an appearance.

Before: SILBERMAN, RANDOLPH, and ROGERS, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

The Center Rutland Project—a hydroelectric dam—lies on Otter Creek, in Rutland County, Vermont. Although OMYA, Inc. owns the dam and much of the surrounding property on the banks of the creek, the dam's continued operation is contingent on the license granted to it by the Federal Energy Regulatory Commission: under the Federal Power Act, a non-federal entity (such as OMYA) must obtain a license from the Commission to operate a hydroelectric project on a body of water that contributes to interstate commerce (such as, apparently, Otter Creek). 16 U.S.C. § 797(e).

OMYA's original license, which lasted for nearly thirty years, expired on December 31, 1993. In anticipation of the expiration of its license, OMYA applied for a new license in late 1991. The Commission issued a new license for the dam on March 31, 1993. *OMYA, Inc.*, 62 F.E.R.C. ¶ 62,224 (1993). Pursuant to the Federal Power Act, the Commission can impose conditions in the license "for the adequate protection, mitigation, and enhancement of fish and wildlife ..., and for other beneficial public uses, including ... recreational and other purposes." 16 U.S.C. § 803(a).

Accordingly, Article 407 of the license requires OMYA to "develop and file," within one year "for Commission approval, a recreation plan for providing formal access to the

project tailwaters." 62 F.E.R.C. at 63,420. Among other requirements, the Commission determined that the "plan must include provisions for and drawings of a small off-street parking area (with 3 to 5 car spaces), signage, landscaping, and a marked footpath to the river." *Id.* In addition, FERC required OMYA to "explore the feasibility of providing a canoe portage route . . . to enable canoeists to cross the land." *Id.* The Commission reserved "the right to require changes to the plan." *Id.*

Article 408 requires OMYA to "implement the provisions of the 'Programmatic Agreement Among the Federal Energy Regulatory Commission, the Advisory Council on Historic Preservation, and the Vermont State Historic Preservation Office for the Management of Historic Properties affected by the Center Rutland Project.'" *Id.* at 63,420–21. This Programmatic Agreement required OMYA to implement a historic preservation plan to protect the historic and archaeological sites and structures on OMYA's property, and to develop "a permanent exhibit, brochure, slide presentation, and outdoor signage" to enable the public to appreciate the property's historic and archaeological values. Programmatic Agreement at 6 (Apr. 6, 1993). Here too, the Commission reserved the right to "require changes . . . at any time during the term of the license." *OMYA, Inc.,* 62 F.E.R.C. at 63,421.

OMYA filed a request for rehearing, which the Commission denied. *OMYA, Inc.,* 74 F.E.R.C. ¶ 61,353 (1996). This petition for review followed. *See* 16 U.S.C. § 825*l*(b).

Most of the arguments OMYA raises in this court are barred because it failed to raise these objections in its application for rehearing before the Commission. Whether substantial evidence supported the Commission's decision to require each condition (the canoe portage, the parking lot, the historical center, and such) is an issue OMYA never raised before the agency. OMYA concedes this, but suggests that it need not exhaust challenges to the Commission's factual findings. Reply Brief of Petitioner OMYA, Inc. at 4–5. The statute governing the scope of our review contains no such exception, and instead permits new arguments on appeal only if "there is reasonable ground for failure" to raise the arguments below. 16 U.S.C. § 825*l*(b). OMYA has not offered such an excuse.

OMYA also challenges the Commission's order on the basis of the Fifth Amendment's Taking Clause. But OMYA barely hinted at such a claim in its request for reconsideration. There, in a footnote, OMYA observes that a "'taking' may be found because the unreasonable conditions prevent" OMYA "from continuing to use the Project as it had in the past." Request of OMYA, Inc. for Rehearing Pursuant to Rule 713, at 13 (filed Apr. 28, 1993). The only other reference to the Taking Clause in the reconsideration request appears in connection with OMYA's procedural due process argument (abandoned on appeal) where OMYA quotes the entire Fifth Amendment. *Id.* at 16. This is not enough to preserve the argument. *See City of Vernon, California v. FERC,* 845 F.2d 1042, 1047 (D.C.Cir.1988). In any event, no taking claim could lie here; the remedy for a taking without just compensation is a suit brought pursuant to the Tucker Act. *See Ruckelshaus v. Monsanto,* 467 U.S. 986, 1016–19, 104 S.Ct. 2862, 2879–81, 81 L.Ed.2d 815 (1984); *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 155–56, 95 S.Ct. 335, 364–65, 42 L.Ed.2d 320 (1974). The cases OMYA cites—*Nollan v. California Coastal Comm'n,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), and *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994)—involved takings by a state, to which Tucker Act remedies do not apply.

OMYA's final argument is that when deciding whether to issue the license with the particular conditions OMYA finds offensive, the Commission did not give "equal consideration" to "the power and developmental purposes" of the dam in addition to recreational and historical purposes. 16 U.S.C. § 797(e). In particular, OMYA argues that the Commission's methodology was flawed. *See Mead Corp.,* 72 F.E.R.C. ¶ 61,027, at 61,068–70, *order on reh'g,* 76 F.E.R.C. ¶ 61,352 (1995), *appeal pending sub nom. Kelley v. FERC,* No.96–1453 (D.C.Cir.). OMYA thinks that the sum of the conditions imposed

by Articles 407 and 408 will cause its hydro-electric project to become uneconomic, and that the Commission did not give sufficient consideration to "power and developmental purposes." We do not decide whether the economic analysis the Commission adopted in *Mead*, and applied in this case, gives unequal consideration to power purposes. The issue is not yet ripe. *See Northern Ind. Pub. Serv. Co. v. FERC,* 954 F.2d 736, 738 (D.C.Cir.1992). How much each challenged requirement will cost OMYA is not yet certain. Until these figures are set, any economic assessment of the conditions on the license would be speculative and premature. For this reason, the Commission conceded at oral argument that OMYA may raise this issue before the Commission once the costs of each condition are established. ˙

Although OMYA has waived its challenge to the underlying validity of the conditions in Articles 407 and 408, it may challenge the sufficiency of the Commission's consideration of "power and developmental purposes" in further agency proceedings. The petition for review is

*Denied.*