141 F.3d 364
 329 U.S.App.D.C. 401, Util. L. Rep. P 1498
 LOUISIANA ENERGY AND POWER AUTHORITY, Petitioner
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent
Central Louisiana Electric Company, Inc., Intervenor for Respondent
 No. 97-1098.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 22, 1998.
Decided April 24, 1998.
 
 [329 U.S.App.D.C. 402] On Petition for Review of Orders of the Federal Energy Regulatory Commission.
 Milton J. Grossman argued the cause for petitioner, with whom Wallace Edward Brand was on the briefs.
 Timm L. Abendroth, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent, with whom John H. Conway, Deputy Solicitor, was on the brief.
 John T. Stough, Jr., and Thadd A. Prisco were on the brief for intervenor Central Louisiana Electric Company, Inc.
 Before: WILLIAMS, HENDERSON and GARLAND, Circuit Judges.
 GARLAND, Circuit Judge:
 
 
 1
 The Federal Power Act requires that all rates demanded by public utilities for the transmission or sale of electric energy be "just and reasonable." 16 U.S.C. § 824d(a). Where there is a competitive market, the Federal Energy Regulatory Commission (FERC) may rely on market-based rates in lieu of cost-of-service regulation to ensure that rates satisfy this requirement. Cf. Elizabethtown Gas Co. v. FERC, 10 F.3d 866, 870 (D.C.Cir.1993) (discussing "just and reasonable" rate requirement of Natural Gas Act). Under its precedents, the Commission approves applications to sell electric energy at market-based rates only if the seller and its affiliates do not have, or adequately have mitigated, market power[1] in the generation and transmission of such energy, and cannot erect other barriers to entry by potential competitors. See, e.g., Heartland Energy [329 U.S.App.D.C. 403] Servs., Inc., 68 FERC p 61,223 at 62,060 (1994); Louisville Gas & Elec. Co., 62 FERC p 61,016 at 61,143-44 (1993).
 
 
 2
 Without holding an evidentiary hearing, FERC approved an application by Central Louisiana Electric Company (CLECO) to sell electric energy at market-based rates. Louisiana Electric & Power Authority (LEPA), a competitor and customer of CLECO, challenges that approval as arbitrary and capricious, arguing that CLECO does in fact have market power.[2] LEPA's express concern is that by leaving CLECO's rates unregulated, the Commission has freed CLECO to use predatory pricing[3] to lure away LEPA's customers. CLECO, on the other hand, argues that LEPA's "true motive" is not to prevent predatory pricing, but rather "to force CLECO to sell ... at a higher price, so that LEPA itself can sell at a higher [noncompetitive] price without losing load to CLECO." Our review is limited to determining whether FERC's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Michigan Consol. Gas Co. v. FERC, 883 F.2d 117, 120 (D.C.Cir.1989) (quoting 5 U.S.C. § 706(2)(A)). Because the Commission's approval of CLECO's application for market-based rates was none of these, we deny the petition for review.
 
 
 3
 * FERC interposes a threshold objection to LEPA's petition, asserting that LEPA is not a party "aggrieved" by the Commission's order and hence not entitled to petition for judicial review under the Federal Power Act, 16 U.S.C. § 825l. A party is "aggrieved" under this statute if it satisfies both the constitutional and prudential requirements for standing. See Liquid Carbonic Indus. Corp. v. FERC, 29 F.3d 697, 701-04 (D.C.Cir.1994); cf. Moreau v. FERC, 982 F.2d 556, 564 (D.C.Cir.1993) (interpreting similar language in Natural Gas Act). As the Supreme Court recently has restated, the three constitutional requirements are:
 
 
 4
 (1) that the plaintiff have suffered an "injury in fact"--an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of--the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
 
 
 5
 Bennett v. Spear, 520 U.S. 154, ----, 117 S.Ct. 1154, 1163, 137 L.Ed.2d 281 (1997). The prudential requirement relevant here is that "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute" in question. Id. at ----, 117 S.Ct. at 1167.
 
 
 6
 LEPA counters that it is in fact a party "aggrieved" by the Commission's order. It alleges that it will be injured by the increased price competition from CLECO that will flow from FERC's unlawful lifting of regulatory controls. And in support of its contention that such pricing will be predatory, LEPA asserts a history of oligopolistic collusion in which CLECO participated, alleges a relatively recent example of predatory pricing by the oligopoly, and presents an expert's opinion that the oligopoly will continue to exercise substantial market power.
 
 
 7
 FERC did not contest in its brief, and at oral argument explicitly conceded, that as a competitor and customer LEPA comes within [329 U.S.App.D.C. 404] the zone of interests of the Federal Power Act and hence has prudential standing to challenge the grant of CLECO's application. The Commission contends, however, that LEPA has failed to satisfy the "injury in fact" requirement for constitutional standing. More specifically, it contends that LEPA's injury remains "conjectural or hypothetical" because LEPA has not demonstrated that predatory pricing, as opposed to lower competitive pricing, "will occur" under CLECO's new tariff. LEPA must wait to sue, FERC argues, until it actually is injured by predatory pricing on the part of CLECO.
 
 
 8
 But LEPA will be injured by increased price competition from CLECO regardless whether that pricing turns out to be predatory, as LEPA warns, or simply competitive, as CLECO promises.[4] Such injury gives LEPA an "actual" and "imminent," rather than "conjectural or hypothetical," interest sufficient to establish injury in fact. Moreover, that injury also satisfies the other two constitutional requirements not contested here: it is fairly traceable to FERC's decision freeing CLECO to price at market-based rates; and it would be redressed by a favorable decision of this court vacating FERC's order. See Panhandle Producers & Royalty Owners Ass'n v. Economic Regulatory Admin., 822 F.2d 1105, 1108 (D.C.Cir.1987).
 
 
 9
 We repeatedly have held that parties suffer constitutional injury in fact when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition. See, e.g., MD Pharm., Inc. v. DEA, 133 F.3d 8, 11 (D.C.Cir.1998) ("increased competition represents a cognizable Article III injury") (quoting Liquid Carbonic, 29 F.3d at 701); Old Town Trolley Tours, Inc. v. Washington Metro. Area Transit Comm'n, 129 F.3d 201, 202 (D.C.Cir.1997); First Nat'l Bank & Trust Co. v. National Credit Union Admin., 988 F.2d 1272, 1275 (D.C.Cir.1993); Associated Gas Distribs. v. FERC, 899 F.2d 1250, 1258 (D.C.Cir.1990); Investment Co. Inst. v. FDIC, 815 F.2d 1540, 1543 (D.C.Cir.1987); see also Investment Co. Inst. v. Camp, 401 U.S. 617, 620-21, 91 S.Ct. 1091, 1093-94, 28 L.Ed.2d 367 (1971). The lifting of such restrictions alone is generally sufficient, and we have not required litigants to wait until increased competition actually occurs. As we said in Associated Gas Distributors, "petitioners sufficiently establish their constitutional standing by showing that the challenged action authorizes allegedly illegal transactions that have the clear and immediate potential to compete with the petitioners' own sales. They need not wait for specific, allegedly illegal transactions to hurt them competitively." 899 F.2d at 1259 (emphasis added). Accord Panhandle Producers, 822 F.2d at 1108 (competitors will suffer injury in fact from agency order permitting increase in gas supply because "such an increase in supply is likely to depress the prices that [competitors] can secure").
 
 
 10
 None of this renders irrelevant the plausibility of LEPA's claim that predatory pricing will result from FERC's decision. But whether that pricing is likely to be predatory or simply competitive is a question that goes to the merits of FERC's decision to permit market-based rates and not to constitutional standing.[5] As we discuss below, [329 U.S.App.D.C. 405] LEPA's allegation that FERC's decision will lead to predatory pricing, like its claim that a company with as much market power as CLECO should not be freed of price regulation, is the core of LEPA's argument that FERC's order was arbitrary and capricious, and hence unlawful. A party need not prove that the agency action it attacks is unlawful, however, in order to have standing to level that attack.[6] As we said in Claybrook v. Slater, 111 F.3d 904, 907 (D.C.Cir.1997), "[w]hether a plaintiff has a legally protected interest (and thus standing) does not depend on whether he can demonstrate that he will succeed on the merits. Otherwise, every unsuccessful plaintiff will have lacked standing in the first place." To be sure, claims that are "entirely frivolous," Steel Co. v. Citizens for a Better Env't, --- U.S. ----, ---- n. 2, 118 S.Ct. 1003, 1014 n. 2, 140 L.Ed.2d 210 (1998), or have "no foundation in law," Claybrook, 111 F.3d at 907, are insufficient to establish standing. LEPA's allegations, however, cannot be characterized as frivolous, and FERC does not suggest otherwise.
 
 
 11
 Nor are LEPA's claims unripe under our decision in Northern Indiana Public Service Co. (NIPSCO) v. FERC, 954 F.2d 736 (D.C.Cir.1992). In that case, NIPSCO challenged a FERC order approving an open-access transmission tariff for a neighboring utility, contending that open-access transmissions through that utility would put additional stress on NIPSCO's own facilities. We accepted FERC's interpretation of its order as approving "merely the concept and outline of open-access but [not as giving] ... final authorization to conduct any open-access transactions." Id. at 738, 740. On that basis, we held NIPSCO's claims "premature" and not ripe. Id. at 740. We indicated, however, that "NIPSCO's claims probably would be ripe" if "the orders [had] authorize[d] [the neighboring utility] to provide open-access service without further FERC action." Id. at 738. In this case, FERC clearly has authorized CLECO to sell power at market-based rates "without further FERC action." FERC's order permitted CLECO's market-based tariff "to become effective on October 8, 1996," subject only to certain revisions it ordered CLECO to make within 15 days. Central Louisiana Elec. Co., 77 FERC p 61,020 at 61,074 (1996).[7] The revisions were made, see LEPA Br. at 4, the order is effective, and CLECO is now free to compete with LEPA at market-based rates. Hence, there is nothing premature about [329 U.S.App.D.C. 406] LEPA's challenge.[8]
 
 II
 
 12
 Although LEPA has standing and its claims are ripe, its case fails on the merits. In approving CLECO's application, the Commission concluded that CLECO lacked market power in the generation of electric energy, and that by filing an open-access transmission tariff (discussed further below), CLECO mitigated its market power over transmission. LEPA first challenges FERC's definition of the relevant market for generation.[9] We need not review that extended challenge here, however, because even if LEPA's showing were strong enough to overcome the deference due FERC's expert judgment on the matter, cf. National Aviation Trades Ass'n v. Civil Aeronautics Bd., 420 F.2d 209, 213-14 (D.C.Cir.1969) (deferring to Civil Aeronautics Board's definition of product market), the issue is essentially moot. LEPA does not dispute that even under its own definition of the relevant market, CLECO's market share is still too low (8.7%) to justify a finding of disqualifying market power under FERC's precedents, see Louisville Gas, 62 FERC p 61,016 at 61,146 (finding that market shares of less than 20% are low enough to demonstrate lack of market power), or to suggest that CLECO has sufficient market power to engage in predatory pricing, see Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 119 n. 15, 107 S.Ct. 484, 494 n. 15, 93 L.Ed.2d 427 (1986) (noting that 20.4% market share is probably insufficient to sustain predatory pricing, and citing authorities indicating that 60% or more would be necessary).
 
 
 13
 Because under any definition CLECO lacks sufficient market power on its own, LEPA is compelled to argue that CLECO is part of an oligopoly that controls 86% of the market. LEPA asserts that the members of the oligopoly have refrained from competing for each other's customers in the past, are unlikely to compete in the future notwithstanding changes in the regulatory environment, and hence provide the market structure necessary to support predatory pricing. FERC rejects this assertion as "broad and unsubstantiated." Central Louisiana Elec. Co., 78 FERC p 61,089 at 61,325 (1997) (order denying rehearing). That characterization seems appropriate. The only evidence LEPA advances to support its claim is the affidavit of an economics expert. See Joint Appendix ("J.A.") 54-94. But the expert's theoretical conclusion that the relevant market is dominated by a "tight oligopoly" whose members do not compete with each other is concededly based entirely on undocumented assertions of historical fact by LEPA's former general manager. Cf. Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 242, 113 S.Ct. 2578, 2597-98, 125 L.Ed.2d 168 (1993) ("When an expert opinion is not supported by sufficient facts to validate it ..., it cannot support a jury's verdict."). Moreover, although the expert characterizes the market structure as a tight oligopoly, he does not address whether that structure's components are sufficient to satisfy the specific prerequisites for successful predatory pricing--indeed, he does not mention the prospect of future predatory pricing at all. Cf. id. at 226, 113 S.Ct. at 2589-90 ("Determining whether recoupment of predatory losses is likely requires ... a close analysis of ... the structure and conditions of the relevant market."). And while LEPA filed a complaint in a separate FERC proceeding asserting a past instance of predatory pricing, the administrative law judge who heard the case rejected LEPA's claim, see Central Louisiana Elec. Co., 70 FERC p 63,015 (1995), and the facts of that proceeding are not before us. Given the well-recognized difficulties faced by an oligopoly attempting to coordinate a predatory pricing scheme [329 U.S.App.D.C. 407] among multiple firms, see Brooke Group, 509 U.S. at 227-28, 113 S.Ct. at 2590-91, and the absence of any evidence from LEPA addressing those difficulties in the specific context of the market at issue here, we find reasonable FERC's conclusion that there are no market-power considerations that should bar CLECO's application to sell at unregulated rates. See generally K N Energy, Inc. v. FERC, 968 F.2d 1295, 1303 (D.C.Cir.1992) (acknowledging "substantial deference" owed to FERC "in matters predictive and economic").[10]
 
 
 14
 We also find reasonable FERC's further argument that even if CLECO had participated in oligopolistic behavior in the past, the Commission's new open-access transmission rules have transformed the competitive environment. Those rules seek to break a utility's monopoly over the transmission of electric power by requiring that the utility permit wholesale sellers to transmit power over its facilities under the same terms and conditions as the utility itself transmits power. See Promoting Wholesale Competition Through Open Access Non-Discriminatory Transmission Services by Public Utilities ("Order No. 888"), 61 Fed.Reg. 21,540, 21,540-42 (1996).[11] Thus, competitors outside the current, alleged oligopoly will now be able to transmit power into CLECO's territory on nondiscriminatory terms. Whatever may have been their past practices, FERC believes that this change renders it unlikely that "energy suppliers will decline to participate in the emerging competitive markets." Central Louisiana Elec. Co., 77 FERC p 61,020 at 61,073. This is the kind of reasonable agency prediction about the future impact of its own regulatory policies to which we ordinarily defer. See Michigan Pub. Power Agency v. FERC, 963 F.2d 1574, 1580 (D.C.Cir.1992) ("agencies are afforded wide deference in predicting the likelihood of future events"); Environmental Action, Inc. v. FERC, 939 F.2d 1057, 1064 (D.C.Cir.1991) ("it is within the scope of the agency's expertise to make such a prediction about the market it regulates, and a reasonable prediction deserves our deference notwithstanding that there might also be another reasonable view"); Michigan Consol. Gas, 883 F.2d at 124 ("Making predictions is clearly within the Commission's expertise and will be upheld if rationally based on record evidence.") (citations and internal quotations omitted).
 
 
 15
 Indeed, in the context of LEPA's fears of predatory pricing, this change in the competitive environment is particularly potent. It means that CLECO will not be able to price below cost to drive LEPA out of business, and then rely on the forbearance of its oligopoly partners to allow it to recoup its predatory losses by pricing supracompetitively. However much those partners might be willing to cooperate (which would itself require a difficult allocation of present losses and future gains), they will be unable to prevent other potential competitors from transmitting power into the area if prices become supracompetitive. Yet, without an expectation of successful recoupment, a rational seller is unlikely to undertake a course of predatory pricing. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986).
 
 
 16
 Finally, FERC notes that should the Commission's sanguine predictions about market conduct turn out to be incorrect, LEPA can file a new complaint for any abuses of market power that do occur. See Central Louisiana Elec. Co., 77 FERC p 61,020 at 61,073. While this escape hatch might be insufficient if LEPA had shown a substantial likelihood that FERC's predictions would prove incorrect,[12] [329 U.S.App.D.C. 408][12] it provides an appropriate safeguard against the uncertainties of FERC's prognostications where there has been no such showing.[13] On the record before us, the likelihood is that competition and consumer welfare will be enhanced rather than undercut by the ability of CLECO to sell at market-based rates, and hence the direction in which FERC has chosen to err, if it errs at all, seems perfectly reasonable. Cf. Cargill, 479 U.S. at 122 n. 17, 107 S.Ct. at 495 n. 17 ("because cutting prices in order to increase business often is the very essence of competition ... mistaken inferences [of predatory conduct] ... are especially costly") (internal quotation omitted); Brooke Group, 509 U.S. at 224, 113 S.Ct. at 2588 ("unsuccessful predation is in general a boon to consumers"); Richard J. Pierce, Jr., Antitrust Policy in the New Electricity Industry, 17 ENERGY L.J. 29, 34-41 (1996).
 
 III
 
 17
 We also reject LEPA's allegation that it was arbitrary and capricious for FERC to approve CLECO's application without first holding an evidentiary hearing. In general, the Commission must hold an evidentiary hearing "only when a genuine issue of material fact exists, and even then, FERC need not conduct such a hearing if [the disputed issues] may be adequately resolved on the written record." Cajun Elec. Power Coop., Inc. v. FERC, 28 F.3d 173, 177 (D.C.Cir.1994) (internal quotations and citations omitted). We will reverse FERC's decision to deny an evidentiary hearing only for an abuse of discretion. See id.
 
 
 18
 Contrary to LEPA's claims, this is not a case like Cajun Electric, where the record revealed a substantial factual dispute as to whether a FERC-approved tariff truly mitigated a utility's monopoly power, see id. at 175, and where the Commission "ignored this important question" and "failed to adequately explain its approval," id. at 180. Here, FERC neither ignored LEPA's concerns about market power, nor failed to explain adequately why they did not carry the day. Moreover, because LEPA conceded that even under its definition of the relevant market, CLECO by itself did not possess market power, the only arguably disputed material fact was whether CLECO was a member of a historical oligopoly capable of supporting a predatory pricing scheme. That assertion may well have been so unsubstantiated as to justify a decision on the written record. See Michigan Pub. Power, 963 F.2d at 1583 (FERC "need not launch a full investigation just because a party cries 'anticompetitive behavior' "). But regardless of its validity, that claim, too, was rendered nonmaterial by FERC's conclusion that the advent of open-access transmission tariffs made such historical conduct a poor predictor of future competitive behavior. That left only the question whether FERC's own prediction about the competitive future was reasonable. And in light of the considerations discussed in Part II above, that was an issue the Commission could readily resolve against LEPA on the written record. Cf. id.; Louisiana Ass'n of Indep. Producers & Royalty Owners v. FERC, 958 F.2d 1101, 1113-14 (D.C.Cir.1992).
 
 
 19
 In sum, we find neither FERC's approval of CLECO's market-based tariff, nor its decision to render that approval without an evidentiary hearing, arbitrary or capricious. Accordingly, we deny LEPA's petition for review.
 
 
 
 [1]
 FERC defines market power as a seller's ability to "significantly influence price in the market by withholding service and excluding competitors for a significant period of time." Citizens Power & Light Corp., 48 FERC p 61,210 at 61,777 (1989)
 
 
 [2]
 LEPA does not challenge FERC's general policy of permitting market-based rates in the absence of market power
 
 
 [3]
 The Supreme Court has stated that "[p]redatory pricing may be defined as pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run." Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 117, 107 S.Ct. 484, 493, 93 L.Ed.2d 427 (1986). The Court has left unresolved the appropriate measure of such "cost." See id. at 117-18 n. 12, 107 S.Ct. at 493-94 n. 12; Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 222-23 & n. 1, 113 S.Ct. 2578, 2587-88 n. 1, 125 L.Ed.2d 168 (1993). Here, LEPA variously describes the predatory pricing about which it is concerned as pricing below "incremental cost" and as pricing "substantially below costs."
 
 
 [4]
 There is, of course, another possibility: if the asserted oligopoly truly does have market power, it could price above rather than below the competitive price--the typical concern of classical oligopoly theory. See generally PAUL A. SAMUELSON & WILLIAM D. NORDHAUS, ECONOMICS 532-36 (12th ed.1985); DONALD S. WATSON, PRICE THEORY AND ITS USES 413-41 (3d ed.1972). Under this scenario, LEPA-as-competitor would be helped rather than harmed by FERC's decision, and hence would not suffer injury; LEPA-as-customer, on the other hand, would be injured. No party urges this scenario here, however
 
 
 [5]
 Theoretically, it is also the kind of question that could be relevant to prudential standing. See Steel Co. v. Citizens for a Better Env't, --- U.S. ----, ---- n. 2, 118 S.Ct. 1003, 1014 n. 2, 140 L.Ed.2d 210 (1998) (citing National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers, 414 U.S. 453, 456, 94 S.Ct. 690, 692, 38 L.Ed.2d 646 (1974), for the proposition that "the merits inquiry and the statutory standing inquiry often 'overlap' "). It is plain that the antitrust laws, for example, "were enacted for the protection of competition not competitors." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (internal quotation omitted). But the same cannot be said about the all-pervasive regulatory schemes of the Federal Power Act and similar statutes. See Panhandle Producers, 822 F.2d at 1109 (holding that competitors have standing to challenge importation order under Natural Gas Act, and noting difference from standing under antitrust laws); see also National Credit Union Admin. v. First Nat'l Bank & Trust Co., --- U.S. ----, ----, 118 S.Ct. 927, 933, 140 L.Ed.2d 1 (1998) ("competitors of financial institutions have [prudential] standing to challenge agency action relaxing statutory restrictions on the activities of those institutions"); Associated Gas Distribs., 899 F.2d at 1259 (prudential standing of competitors under Natural Gas Act); Regular Common Carrier Conference v. United States, 793 F.2d 376, 379 (D.C.Cir.1986) ("competitive injury is included within the zone of interests protected by the Interstate Commerce Act"). Here, FERC does not dispute that both concerns, predation and competition, come within the zone of interests of the Federal Power Act
 
 
 [6]
 See Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324-25, 82 L.Ed.2d 556 (1984) (holding that the "core component" of constitutional standing is that "plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct ...") (emphasis added); Old Town Trolley, 129 F.3d at 202 (petitioner does not have to prove the public interest claim required to defeat a competitor's entry on the merits in order to pass the threshold of standing); Associated Gas Distribs., 899 F.2d at 1258 ("Those who must compete with allegedly illegal commercial transactions have Article III standing to challenge a regulatory order authorizing the transactions.") (emphasis added); In re Thornburgh, 869 F.2d 1503, 1511 (D.C.Cir.1989) ("the [redressability prong of the standing] test assumes that a decision on the merits would be favorable"); see also Steel Co., --- U.S. at ---- n. 2, 118 S.Ct. at 1014 n. 2 ("[t]he Article III requirement of remediable injury in fact ... except with regard to entirely frivolous claims ... has nothing to do with the text of the statute relied upon"); id. at ----, ----, 118 S.Ct. at 1011, 1013
 
 
 [7]
 FERC's order also requires CLECO to report market-based transactions, as well as "change[s] in status that would reflect a departure from the characteristics the Commission has relied upon in approving market-based pricing." 77 FERC p 61,020 at 61,074. That the Commission may subsequently act on such reports does not render LEPA's current challenge unripe. Any such subsequent agency action would involve a new proceeding
 
 
 [8]
 Cf. Cajun Elec. Power Coop., Inc. v. FERC, 28 F.3d 173, 177-80 (D.C.Cir.1994) (rejecting FERC argument that it was "premature[ ]" for the court to consider whether the agency's approval of cost-recovery provisions would have an anticompetitive effect because affected parties could still challenge recovery of such costs in particular cases)
 
 
 [9]
 LEPA argues that the Commission's market analysis was flawed because it did not separately evaluate generation dominance in the market for requirements power, which it defines as "power sold by bulk suppliers to retail distributors with a complete assurance of availability." Central Louisiana Elec. Co., 77 FERC p 61,020 at 61,072
 
 
 [10]
 We also note petitioner's statement at oral argument that Entergy, Inc., the largest member of the alleged oligopoly with a 70% market share, already has received FERC approval to price at market rates and that LEPA, pursuant to a settlement, will not challenge that approval. LEPA has not explained how FERC's approval of market rates for CLECO (with only an 8.7% market share) would materially affect the likelihood of predation under these circumstances
 
 
 [11]
 Order No. 888 has been challenged in petitions for review filed with the Second Circuit, which recently ordered the litigation transferred to this Circuit. See New York v. FERC, No. 97-4034 (2d Cir. Feb. 26, 1998). The validity of Order No. 888 is not before us in this case
 
 
 [12]
 See Cajun Elec., 28 F.3d at 177-80; Michigan Pub. Power, 963 F.2d at 1581
 
 
 [13]
 See Environmental Action v. FERC, 996 F.2d 401, 410 (D.C.Cir.1993); Michigan Pub. Power, 963 F.2d at 1579-81